CITY OF MILWAUKEE, Appellant, v. SHOUP VOTING MA-
CHINE CORPORATION, Respondent.

*No. 108. Argued March 28, 1972.—Decided May 2, 1972.*
(Also reported in 196 N. W. 2d 694.)

For the appellant there was a brief by *John J. Fleming,* city attorney, and *Walter J. Schutz,* assistant city attorney, and oral argument by *Mr. Schutz.*

For the respondent there was a brief by *Foley & Lardner,* attorneys, and *Eugene C. Daly* and *Clarence W. Malick* of counsel, all of Milwaukee, and oral argument by *Mr. Daly.*

BEILFUSS, J. There are three issues presented:

1. Are the voting machines leased by the city exempt from taxation under sec. 11 [1] and the Milwaukee city charter?

2. Does the exemption of the voting machines leased by the city violate the uniformity of taxation requirement of the Wisconsin Constitution?

3. Is the city the owner of the voting machines for purposes of the state *ad valorem* tax?

Shoup asserts and the trial court found that ch. 184, subch. XX, sec. 11, Laws of 1874, exempts the voting machines from taxation. The city argues that sec. 11 refers only to property owned by the city and that leased property does not come within the purview of sec. 11.

Ch. 184, subch. XX, sec. 11, Laws of 1874 (sec. 26.02 of the Milwaukee city charter), provides:

"The said city may lease, purchase and hold real or personal estate sufficient for the convenience of the

[1] Ch. 184, subch. XX, sec. 11, Laws of 1874, and also sec. 26.02 of the Milwaukee city charter.

inhabitants thereof; and may sell and convey the same; and the same shall be free from taxation."

The language of sec. 11 clearly indicates that personal property leased by the city for the convenience of its inhabitants shall be free from taxation. Both parties are agreed that the city leased 1,025 voting machines from Shoup, with an option to purchase, applying the rental payment to the purchase price.

Voting machines are personal property within the scope of sec. 70.04, Stats.[2]

There is no doubt but that the voting machines were leased by the city, and for the "convenience of the inhabitants" on election days. Therefore the voting machines come within the purview of sec. 11 and are exempt from taxation under the provisions of the charter ordinance.

In *Milwaukee v. Milwaukee County* (1897), 95 Wis. 424, 69 N. W. 819, this court stated that property leased by the city of Milwaukee was exempt from taxation. However, on the facts of that case the court held that the financial arrangement was not a lease but only an option to purchase. Therefore the property in question was not exempt from taxation under sec. 11 and the city charter.

Additionally, it is noted that to adopt the city's narrow construction of sec. 11 would effectively negate the term "lease." One of the time-honored maxims of statutory construction is that a separate meaning must attach to each individual term in a legislative act. *State ex rel. Knudsen v. Board of Education* (1969), 43 Wis. 2d 58, 168 N. W. 2d 295; *Associated Hospital Service v. Milwaukee* (1961), 13 Wis. 2d 447, 109 N. W. 2d 271. Consequently, the conclusion reached above that the leased property falls within the ambit of sec. 11 is harmonious with this elementary rule of statutory construction.

---

[2] "**Definition personal property.** The term 'personal property,' as used in this title, shall include all goods, wares, merchandise, chattels, and effects, of any nature or description, having any real or marketable value, and not included in the term 'real property,' . . ."

In 1921 the legislature repealed the charters of all cities except cities of the first class. Milwaukee is a city of the first class. Ch. 242, Laws of 1921 (now secs. 62.02 and 62.03, Stats.). The city's charter is therefore still operative.

Appellant city cites *Weeks v. Milwaukee* (1860), 10 Wis. 186 (*242), for the proposition that a city cannot exempt property from taxation because this action would invalidate the entire tax. However, in *Weeks* the city council attempted to exempt taxable property whereas the exemption provision here was enacted by the legislature as a part of the city's charter.

The city also argues that the legislature intended to repeal or supersede sec. 11 by the enactment of ch. 70 of the statutes. Ch. 70 provides the basis on which general property, both real and personal, may be taxed.

Sec. 70.18 (1), Stats., provides:

**"Personal property, to whom assessed. (1)** Personal property shall be assessed to the owner thereof, except that when it is in the charge or possession of some person other than the owner it may be assessed to the person so in charge or possession of the same. . . ."

Sec. 70.11, Stats., establishes various classes of property which are exempt from taxation but does not include personal property leased by a municipality.

On the basis of these statutory provisions the appellant city contends that taxation and, consequently exemption from the *ad valorem* personal property taxation, is not a local matter but rather a state matter. Therefore, concludes the city, the comprehensive statewide uniform rule of taxation and exemption manifests a legislative intent to withdraw its earlier enactments, specifically sec. 11.

However, the city's argument fails for two reasons. First, sec. 70.18 (1), Stats., states that personal property shall be assessed to the owner or possessor. It does not

deal with exemptions. Sec. 70.11 in general provides a list of exempted property but does not deal specifically with personal property leased by the city of Milwaukee even though sec. 70.11 (2) [3] provides exemptions for property owned by the city. Consequently, in order for this court to find that the legislature intended to repeal sec. 11 and the city charter it would have to do so by implication.

Sec. 991.09, Stats., provides:

> **In force in cities and villages.** All the laws contained in these revised statutes shall apply to and be in force in each and every city and village in the state as far as the same are applicable and not inconsistent with the charter of any such city or village; but when the provisions of any such charters are at variance with the provisions of these revised statutes the provisions of such charters shall prevail unless a different intention be plainly manifested."

Ch. 70, Stats., does not plainly manifest the legislative intention to repeal sec. 26.02 of the city charter. Therefore sec. 11 was not repealed or superseded by the enactment of ch. 70.

Further, the legislature, in enacting the city's charter, provided:

> "No general law of this state, contravening the provisions of this act, shall be considered as repealing, amending, or modifying the same, except such purpose be expressly set forth in such law." Ch. 184, subch. XX, sec. 14, Laws of 1874 (sec. 26.05, Milwaukee city charter).

In *Baines v. Janesville* (1898), 100 Wis. 369, 75 N. W. 404, 76 N. W. 481, the city charter of Janesville required unanimous approval by all the owners of lots on a street before such street could be discontinued. A later statute

---

[3] **"Property exempted from taxation.** The property described in this section is exempted from general property taxes: . . .

"(2) MUNICIPAL PROPERTY; EXCEPTION. Property owned by any county, city, village, town, . . ."

provided that only two thirds of the lot owners need approve discontinuance of a street. This court held, in applying what is presently sec. 991.09, Stats., that the charter provision prevailed because the legislature had not specifically expressed an intention to overrule a charter provision within the later legislation itself.

Similarly, in *Madden v. Kinney* (1903), 116 Wis. 561, 93 N. W. 535, a general statute provided that the board of education needed common council approval to buy textbooks. A city of Fond du Lac charter provision did not require such approval. This court again applied what is presently sec. 991.09, Stats., to the situation and held that the charter provision prevailed.

The city has cited *State ex rel. Thompson v. Beloit City School Dist.* (1934), 215 Wis. 409, 253 N. W. 598, and *Fire Department of the City of Oshkosh v. Tuttle* (1880), 48 Wis. 91, 4 N. W. 134, for the proposition that the legislature intended to repeal the charter provisions regarding taxation. An examination of those two cases reveals that in both cases the legislature specifically provided within the legislation itself that the new legislation was intended to supplant any conflicting laws or parts of laws. Thus, both of these cases are in accord with *Baines* and *Madden, supra,* and sec. 991.09, Stats. In this case the legislature has not so manifestly expressed an intention to repeal sec. 26.02 of the city's charter. Therefore sec. 11 is valid and provides an exemption from taxation for the 1,025 voting machines.

The city contends that sec. 26.02 violates art. VIII, sec. 1 of the Wisconsin Constitution, which provides in part:

"**Rule of taxation uniform; income, privilege and occupation taxes.** SECTION 1. [*As amended Nov. 1908, April 1927, April 1941 and April 1961*] The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods. . . ."

However, that issue was not presented to the trial court. This court has stated that whether it will review an issue raised for the first time on appeal depends upon the facts and circumstances disclosed by the particular record. *State ex rel. General Motors Corp. v. Oak Creek* (1971), 49 Wis. 2d 299, 319, 182 N. W. 2d 481.

On the basis of this record, and the paucity of discussion in the briefs, the issue of uniform taxation will not be considered in this opinion.

The trial court also concluded that the city was the true and beneficial owner of the voting machines and that they were exempt from taxation. Because of our opinion that the voting machines are exempt under the city charter, a determination of whether the city is the true or beneficial owner is probably not necessary for the resolution of this case. However, because the issue was treated by the trial court, briefed and argued by counsel on appeal, and because our opinion may be of concern to municipalities without a valid charter exemption, we have determined to decide the issue.

Except for the charter exemption the taxability of the voting machines would be controlled by ch. 70, Stats., which deals with *ad valorem* property taxation. All property, both real and personal, within the state is to be taxed unless exempt.

Sec. 70.11 (2), Stats., provides:

"70.11 **Property exempted from taxation.** The property described in this section is exempted from general property taxes: . . .

"(2) MUNICIPAL PROPERTY, EXCEPTION. Property owned by any county, city, village, town, . . ."

The question that arises is whether the city is the owner of the machines for purposes of sec. 70.11 (2), Stats.

In *Mitchell Aero, Inc. v. Milwaukee* (1969), 42 Wis. 2d 656, 168 N. W. 2d 183, the county of Milwaukee leased land to Mitchell on which Mitchell operated a noncommercial aviation business. During the course of the lease Mitchell constructed two hangars, vesting title in the county. The city of Milwaukee levied taxes on the hangars against Mitchell. The court stated that legal title alone was not determinative as to who was the true owner of the property. The court, at page 662, described ownership for tax purposes as follows:

"We think the ownership of property by a municipality to qualify for exemption under sec. 70.11 (2), Stats., means real or true ownership and not paper title only. Ownership is often referred to in legal philosophy as a bundle of sticks or rights and one or more of the sticks may be separated from the bundle and the bundle will still be considered ownership. What combination of rights less than the whole bundle will constitute ownership is a question which must be determined in each case in the context of the purpose of the determination. In this case for exemption one needs more than the title stick to constitute ownership." [4]

In the *Mitchell Case* we considered the uses of the buildings and the amortization of their construction costs by Mitchell, and the fact that Mitchell was responsible for the repair and upkeep of the hangars, including all structural repairs. Mitchell was also required to procure fire and extended insurance coverage for one hangar. We concluded that these and other factors necessitated the conclusion that Mitchell was the beneficial owner of the hangars and therefore the hangars were liable to taxation.

Here, Shoup leased the voting machines to the city under a ten-year lease which began in April of 1966, some six years ago. The lease specifies a rent of $163 per machine per year plus four percent interest on the

[4] *See State ex rel. General Motors Corp. v. Oak Creek, supra.*

unpaid balance. At the end of the first four years the city could terminate the lease with a sixty-day written notice. After the initial four-year period passed the lease is deemed in effect for additional two-year periods of time. The city can terminate only at the end of such two-year periods. Shoup does not have the right to terminate the lease, and the city has the option to elect to purchase the machines with the rental payments to apply on the purchase price.

The trial court, in its decision regarding ownership, stated:

"The paper title to the machines reposes in the defendant. The option available to the city to purchase the machines and apply the rentals to the purchase price does not constitute it a vendee under a conditional sales contract. If it did very likely this case would not be before the court with its problems. (*Ritchie v. Green Bay*, 215 Wis. 433.) The city is not bound to exercise its option to buy though the nature of the arrangements between the parties strongly suggests its contemplation to do so and the economic advantages it would derive from doing so.

"The city drew up its proposals or requests for submission of bids. It accepted defendant's bid based thereon, drafted and executed a contract on its own terms and required a bond to guarantee defendant's performance. The machines are in its possession, under its exclusive control, and subject to its sole decision as to the frequency and manner of their municipal use. The city then possesses and enjoys all the incidents of the beneficial use for public purposes, the control, possession, supervision and maintenance of, and dominion over the machines.

"The contract between the parties has been carefully examined and the predominance of ownership rights seems to be with the city. The contract is drawn to assure the city's self-serving protection on all possible contingencies without any reference to its reciprocal duties as lessee of the machines and as a party to the contract. The city assumes certain legal obligations with respect to the machines during the period they are in its

possession. Without enumerating them, they would at least include the duty to care for and protect them, to maintain them in working order and to return them in good shape, usual wear and tear excepted, at the end of the rental term unless purchased. While the insurance on the machines is not revealed, it may be assumed that the city carries it, if the machines are covered, to protect itself in the event of purchase, or for replacement purposes, or to return them or their monetary equivalent if they are to be returned. It derives the benefit of their depreciation by the yearly application of rentals to reduce the purchase cost. It enjoys all the rights of ownership under the lease as it would under a purchase arrangement. It has taken the machines over completely and exclusively, and if the words 'beneficial use' or 'beneficial owner' mean what they claim they say and express then the real true and beneficial owner of them for tax purposes must be declared to be the city.

"The rights of the defendant are minimal. All of its incidental rights of ownership have been surrendered to the city. It may not lease, sell or convey them while they remain subject to the lease. It may not interfere with the incidental rights of ownership of the city without penalty of breach of contract. The only relation it can presently have to the machines is the rental that comes from their use and the right to pledge the contract for loan purposes."

There is a dispute between the parties in their briefs as to who carries the insurance and who is required to. The question of insurance was not covered in the stipulation. Although the fact as to who provides insurance is an important consideration in determining beneficial ownership, it is only one of several factors to be considered and a disregard of the insurance factor does not prevent a valid determination of beneficial ownership.

We agree with the trial court's conclusion that the city is the beneficial owner of the voting machines and that therefore they are exempt from *ad valorem* taxation.

*By the Court.*—Judgment affirmed.