STATE of Wisconsin, Plaintiff-Appellant,

v.

YELLOW FREIGHT SYSTEM, INC., Defendant-Respondent-Petitioner.

Supreme Court

*No. 79–800–CR. Argued March 4, 1981.—Decided March 31, 1981.*

(Also reported in 303 N.W.2d 834.)

For the petitioner there were briefs by *John P. Varda, John H. Lederer* and *DeWitt, Sundby, Huggett & Schumacher, S.C.,* of Madison, and oral argument by Mr. *Lederer.*

For the appellant the cause was argued by *Albert Harriman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

COFFEY, J. This is a review of a decision of the court of appeals[1] reversing a judgment of the circuit court for Kenosha county, the Hon. Michael S. Fisher presiding. After trial, the circuit judge dismissed a number of citations against Yellow Freight System, Inc. (Yellow Freight), for operating motor vehicles (truck tractors) as common carriers without proper permit stamps[2] (permit or identification stamps) contrary to sec. 194.23 (1), Stats.[3] The appellate court's reversal of the trial court's judgment forms the basis of this review.

Yellow Freight is a common carrier authorized by the Interstate Commerce Commission (ICC) to carry cartage interstate and has received authority from the Wisconsin Transportation Commission to operate its vehicles within the boundaries of this state. The defendant, Yellow Freight, *registered* part of its fleet of truck tractors for the 1978 calendar year in either Illinois or Missouri, pursuant to an international motor carrier's compact known as the International Registration Plan (IRP). Believing that its *registration* under the IRP satisfied the Wisconsin permit requirements set forth in ch. 194, Stats., Yellow Freight did not obtain Wisconsin permit stamps for its vehicles, but had, nevertheless, paid permit or identification stamp fees, in addition to registra-

---

[1] The decision of the court of appeals is reported at 96 Wis.2d 484, 292 N.W.2d 361 (Ct. App. 1980).

[2] A permit, permit stamp or identification stamp is a sticker issued to a common carrier by the department of transportation upon payment of a fee evidencing authority granted by the state of Wisconsin to common carriers to operate vehicles within the boundaries of this state. *See:* secs. 194.03(4) and 194.04, Stats. *See also:* 49 C.F.R. §§1023.31 through 1023.35 (1980).

[3] Sec. 194.23(1), Stats., provides in part:

"**Certificate required; hearing; conditions.** (1) No person shall operate any motor vehicle as a common motor carrier except in accordance with the terms and conditions of a certificate issued to and held by him and except by virtue of a permit issued to him for the operation of such vehicle . . ."

tion fees, to both Illinois and Missouri and displayed permit stamps issued by those states on the Uniform Identification Cab Cards[4] assigned to these vehicles. During the period involved in this litigation, Yellow Freight received a number of citations for operating its truck tractors in this state without the proper vehicle identification stamp in violation of sec. 194.23(1). Prior to trial, the criminal charges against Yellow Freight were consolidated by agreement of the parties and recited that Yellow Freight failed to comply with the ch. 194 permit stamp requirement.[5]

The *International Registration Plan* is a comprehensive reciprocal agreement entered into between numerous states and two Canadian provinces and is designed to facilitate the *registration* of motor vehicles operated in interstate commerce within those states and provinces. The IRP is briefly explained in its forward as follows:

"The International Registration Plan is a registration reciprocity compact among states of the United States and provinces of Canada providing for payment of license fees on the basis of fleet miles operated in various jurisdictions.

"The unique feature of this Plan is that even though license fees are paid to the various jurisdictions in which

---

[4] A Uniform Identification Cab Card is a card issued under the authority of the ICC by either the National Association of Regulatory Utility Commissioners or a particular state. It contains spaces for the placement of an identification stamp from each state that requires motor carriers to identify their vehicles as operating under the authority issued by the ICC permitting the motor carrier to conduct operations within the borders of such states. *See:* 49 CFR §§1023.31, 1023.32, 1023.34–1023.36 (1980).

[5] Yellow Freight was prosecuted under sec. 194.17(1), Stats. 1977, subjecting common carriers who operate vehicles in this state in violation of any of the provisions of ch. 194, to criminal penalties: a fine of not less than $50 nor more than $100 or imprisonment for not more than 60 days or both. The penalty for a violation of ch. 194 has since been changed to a civil forfeiture by ch. 34, sec. 1017d, Laws of 1979, effective July 29, 1979.

fleet vehicles are operated, only one (1) license plate and one (1) cab card is issued for each fleet vehicle when registered under the Plan. A fleet vehicle is known as an apportionable vehicle and such vehicle, so far as registration is concerned, may be operated both interstate and intrastate."

Pursuant to the IRP agreement between Wisconsin, Illinois and Missouri, a common carrier who registers his vehicle in a member state fulfills the registration requirements of the member jurisdictions with the payment of one registration fee to the base jurisdiction which in turn apportions the registration fee to the member states. The apportioned registration fees, labelled "apportionable fees,"[6] are calculated for payment to the participating states by a formula based on the mileage operated in the member states and each state's total annual registration fee for the common carrier's vehicle.

Wisconsin, Illinois and Missouri were members of the International Registration Plan during the year in question (1978). Wisconsin received apportioned registration fees for the vehicles registered in Illinois and Missouri, pursuant to the IRP and therefore Yellow Freight fulfilled Wisconsin's *registration* requirements for the truck tractors cited.

In the trial court, Yellow Freight moved to dismiss the state's prosecution charging them with failure to obtain Wisconsin permit stamps and failure to pay the permit fees as required in ch. 194, Stats., on the grounds that the permit fees were included in the registration fees apportioned to Wisconsin under the IRP. The state opposed this motion, arguing that Wisconsin's permit fee was not a part of nor included in the IRP's defini-

---

[6] Art. II, paragraph A of the IRP defines "apportionable fees" as:

". . . any periodic recurring fee required for licensing or registering vehicles, such as but not limited to, registration fees, license or weight fees."

tion of "apportionable fees" and therefore Yellow Freight did not fulfill the Wisconsin permit fee requirement when it *registered* its vehicles in accordance with the IRP but failed to obtain the Wisconsin vehicle permit stamp.

As these facts were not in dispute, the circuit court viewed the dispositive question as one of law, namely, Was Wisconsin's permit fee included in the IRP's definition of "apportionable fees?" The trial court answered this query in the affirmative and dismissed the state's action. The state appealed to the court of appeals which reversed the trial court holding that the permit fees referred to in ch. 194, Stats., are not apportionable under the IRP. The appellate court reasoned that the IRP encompassed only the registration and licensing fees governed by ch. 341, and distinguished permit fees from licensing and registration fees on the grounds that permit fees do not serve the purposes of registration and licensing (raising revenue and identification of vehicles to aid law enforcement), but rather, are applied to the cost of regulating the trucking industry and provide a means of identifying those vehicles *authorized* to operate within this state. *State v. Yellow Freight System, Inc.,* 96 Wis.2d 484, 487–92, 292 N.W.2d 361 (Ct. App. 1980).

The two issues presented for review are:

1. Does sec. 194.04(2), Stats., prohibit Wisconsin from requiring a permit of common carriers who have paid their Wisconsin registration fees in another state in accordance with the IRP, and thereby create an exemption to the payment for and receipt of a Wisconsin permit (identification stamp or permit stamp)?

2. Is the payment by Yellow Freight of an IRP registration fee in sister states (Illinois and Missouri) apportionable so as to allow them to operate as a common carrier in Wisconsin without securing the permit (permit stamp) required by ch. 194, Stats?

Initially, we note that before a common carrier is authorized to operate in this state in interstate commerce, he must fulfill the following three requirements: (1) obtain a *certificate of authority* to operate vehicles in this state, (secs. 194.23(1) and 194.04(1), Stats.); (2) *register* his vehicles in accordance with Wisconsin law, *i.e.*, obtain license plates (ch. 341); and (3) obtain and display a Wisconsin *permit stamp* for each vehicle operated in this state (secs. 194.23(1) and 194.03(4)). The certificate of authority, the permit stamp and registration tag each require a separate fee payment by the common carrier to the state. *See:* sec. 194.04(1) (certificate), sec. 341.25 (registration) and sec. 194.04(1) (bd) and (cm) (permit stamp). Yellow Freight complied only with the first two requirements of certification and registration but failed to obtain a permit stamp; thus the sole controversy in this case is whether Yellow Freight is exempt from the permit stamp requirement or as Yellow Freight contends: Did it (Yellow Freight) fulfill the permit stamp requirements set forth in ch. 194, by registering the vehicles in question in Illinois and Missouri in accordance with the IRP?

Yellow Freight registered the cited vehicles in Illinois and Missouri and the apportioned Wisconsin registration fees were remitted to this state in accordance with the IRP and sec. 341.405(1), Stats.[7]

The defendant, Yellow Freight, contends that sec. 194.04(2), Stats., which in part provides, ". . . No permit shall be issued or renewed for any motor vehicle

[7] Sec. 341.405(1), Stats., authorized the secretary of transportation to implement the IRP in this state:

"**International registration plan.** (1) The secretary of transportation, with approval of the governor, shall ratify and do all things necessary to effectuate the international registration plan adopted by the American association of motor vehicle administrators, with such exceptions as are deemed advisable and such changes as are necessary."

unless the registration required by ch. 341 is paid in this state," eliminates the statutory requirement of obtaining a permit where the Wisconsin registration fees are paid in another state. Thus, Yellow Freight argues that payment of the IRP registration fee in another state (Illinois or Missouri) exempts it from paying the Wisconsin permit fee as set forth in ch. 194.

The court of appeals rejected Yellow Freight's interpretation of the phrase in sec. 194.04(2), Stats., that "No permit shall be issued . . . for any motor vehicle unless the *registration required by ch. 341 is paid in this state*," (emphasis supplied) holding that this singular phrase of the statute must be read in conjunction with the exceptions to the ch. 341 registration requirement in order to arrive at the proper legislative intent. The court noted that a carrier who registers his vehicle in another state, pursuant to the IRP (sec. 341.405(1)), is exempt from only the registration requirement of ch. 341,[8] and not the permit fee requirement. The court, disagreeing with Yellow Freight's contention, further explained that the language of sec. 194.04(2), prohibiting the issuance of a permit until a separate registration fee is paid in Wisconsin was inapplicable to Yellow Freight because Yellow Freight, through its registration in Illinois and Missouri in accordance with the IRP, *was not required to register in Wisconsin pursuant to ch. 341, Stats.,* and therefore was not included in the prohibition to the additional permit stamp requirements.

The appellate court, in rejecting Yellow Freight's interpretation of the disputed phrase in sec. 194.04(2), Stats., relied on an attorney general's opinion (1935).

---

[8] Sec. 341.05, (3) Stats., provides:

"**When vehicles exempt from registration.** A vehicle, even though operated upon a highway of this state, is exempt from registration when such vehicle: . . .

"(3) Is operated in accordance with s. 341.405."

In this opinion the attorney general was presented with the question of whether the predecessor to sec. 194.04 (2) prohibited the Public Service Commission[9] from issuing permits to nonresident, private motor carriers for vehicles exempt from the registration requirements in sec. 85.01, Stats. 1933,[10] by virtue of reciprocal agreements with the states where the carriers were registered. (Sec. 85.05(2) (a) and (b), Stats 1933).[11] The attorney general stated:

[9] In 1935 the Public Service Commission had the authority to determine whether a common carrier should be permitted to operate in this state. This function is now performed by the transportation commission. *See:* ch. 29, sec. 1654(9) (f), Laws of 1977, effective July 1, 1977.

[10] Ch. 85, Stats. 1933, was the precursor of much of ch. 341.

[11] Sec. 85.05(2) (a) and (b), Stats. 1933, provided:

"(2) (a) No motor vehicle, trailer or semitrailer engaged in commercial transportation over regular routes or between fixed termini, or making more than one trip into Wisconsin during any year, whether for direct or indirect hire, and no motor vehicle, trailer or semitrailer used regularly for the delivery or distribution of merchandise within this state or for interstate hauling, shall be operated on the public highways of Wisconsin, unless said motor vehicle shall have paid the full registration fee provided in section 85.01 of the statutes, and shall display Wisconsin number plates. The penalty applying to violations of section 85.01 shall apply to this subsection.

"(b) Provided, that notwithstanding the provisions of paragraph (a) of this subsection the secretary of state shall have authority to enter into reciprocal agreements with the responsible officers of other states, under which motor vehicles; trailers or semitrailers owned by citizens of such states and engaged in commercial transportation may be operated in this state without a Wisconsin registration, provided like privileges are accorded to vehicles owned by Wisconsin citizens in such other states, but the secretary of state shall have no authority to enter into such reciprocal agreements covering motor vehicles, trailers or semitrailers engaged in commercial transportation over regular routes or between fixed termini, or those operating for direct or indirect hire."

". . . At first glance it would seem that the following language from sec. 194.04, subsec. (2), Stats., would require [an affirmative] answer.

" 'No permit shall be issued or renewed for any motor vehicle unless the registration required by section 85.01 shall be paid in this state.'

"However, sec. 85.01 does not necessarily require a non-resident private motor carrier to register in this state, since exceptions to registration requirements are provided under sec. 85.05, Stats., and, if the motor vehicle in question does not need to be registered in Wisconsin, then there would be no point in insisting upon such registration as a requirement preliminary to issuance of a permit.

"In other words, the language in sec. 194.04, subsec. (2), limiting the issuance of permits for motor vehicles to cases where the 'registration *required by section 85.01* shall be paid in this state' must be read with the exceptions to the 'requirements of section 85.01' in mind." 1935 Op. Atty. Gen., 743, 744.

Yellow Freight challenges the court of appeals' interpretation of the disputed phrase in sec. 194.04(2), Stats., claiming: (1) the court of appeals erred in concluding that registration under the IRP is not "registration required by ch. 341 . . . in this state"; and (2) this phrase prohibits the issuance of a permit unless the registration fees required by ch. 341 are *paid in this state*. Therefore, Yellow Freight argues that the final sentence of sec. 194.-04(2) bars Wisconsin from issuing a permit stamp in this case as the separate precondition of registration was required by ch. 341, and the registration fees were paid in other states (Illinois and Missouri). However, at oral argument Yellow Freight conceded that its interpretation of sec. 194.04(2) was strained, stating that the same is "facile" and probably not in accord with legislative intent.[12]

---

[12] Counsel for Yellow Freight made this concession in the following language: "That's a somewhat facile reading of the statute [sec. 194.04(2), Stats.] and I concede that. I don't think that is

We agree with Yellow Freight's concession that its interpretation of sec. 194.04(2), Stats., is strained and adopt the reasoning of the court of appeals holding that common carriers who register in other states pursuant to the IRP are specifically exempt from registration under ch. 341. Further, it is obvious that the disputed phrase in sec. 194.04(2) was clearly intended to prevent the issuance of permits *only* to those common carriers who have not properly registered their vehicles. In other words, proper registration is a condition precedent to the further requirement of obtaining a Wisconsin permit (permit stamp). Since Yellow Freight's truck tractors were properly registered pursuant to the IRP, it was also required to comply with the additional permit requirements set forth in ch. 194.

As the appellate court held, the language in sec. 194.04 (2), Stats., that "No permit shall be issued . . . for any motor vehicle *unless the registration required by ch. 341 is paid in this state*" (emphasis supplied) must be read with the ch. 341 exemption from the separate registration requirement in mind. This language does not create a bar to the issuance of a permit (permit stamp) where no registration fee is required by ch. 341 to be paid in this state. *See:* sec. 341.405(1). Therefore, this phrase is inapplicable to Yellow Freight because common carriers who register their vehicles in other states in accordance with the IRP are exempt from the ch. 341 requirement of payment of registration fees in this state. Sec. 341.05(3). Moreover, Yellow Freight's interpretation of this sentence would defeat the legislative intent by exempting *common carriers who have registered their*

perhaps what the legislature meant. I think what the legislature was probably doing was setting up an enforcement device to make sure the fees [permit] were collected."

vehicles in other states under the IRP from the separate and distinct permit requirements in ch. 194, and impede the Wisconsin authorities in the regulation of the trucking industry as well as deprive them of a means of identifying vehicles authorized to operate in this state. Therefore, Yellow Freight's interpretation of the disputed phrase in sec. 194.04(2) is absurd and unreasonable and must be rejected, for this court has often held that statutes should not be construed or interpreted to achieve absurd or unreasonable results. *State ex rel. Opelt v. Crisp*, 81 Wis.2d 106, 116, 260 N.W.2d 25 (1977). "The plain language of the statute should not be extended or construed to achieve absurd or unreasonable consequences" (cites omitted) ; *Falkner v. Northern States Power Co.*, 75 Wis.2d 116, 124, 248 N.W.2d 885 (1977), "A court will always reject an unreasonable construction of a statute where a reasonable construction appears, and this is so notwithstanding that the statute is to be strictly construed." (cites omitted) ; *State v. Gould,* 56 Wis.2d 808, 812, 202 N.W.2d 903 (1973), "Absurd results or interpretations [of statutes] are to be avoided." (Cites omitted.) Thus, we hold that sec. 194.04(2) does not exempt common carriers registered in other states pursuant to the IRP (Yellow Freight) from the added requirement of having to obtain a Wisconsin permit stamp evincing authorization to operate on Wisconsin highways.

We now address Yellow Freight's other contention that it is exempt from the ch. 194, Stats., permit requirement because a permit fee is an "apportionable fee" under the IRP.

Sec. 194.04(1)(cm), Stats.,[13] requires interstate common carriers authorized to operate in this state to pay a

[13] Sec. 194.04(1)(cm) provides:

"(cm) Vehicles permitted under common or contract motor carrier authorities shall pay permit fees for the same period as registration fees are paid under ch. 341."

permit fee in addition to the registration fee on each of their vehicles. Yellow Freight contends that Wisconsin's permit fee falls within the parameters of the IRP definition of "apportionable fees" (apportioned registration fees) and therefore Yellow Freight is not required to pay an additional permit fee to this state. To fully understand Yellow Freight's claim, it is necessary to analyze various provisions of the IRP.

Art. III, paragraph B of the IRP demonstrates that it affects only "apportionable fees:"

"This agreement does not waive any fees or taxes charged or levied by any jurisdiction in connection with the ownership or operations of vehicles other than the apportionable fees as defined herein. All other fees and taxes shall be paid to each jurisdiction in accordance with the laws thereof."

Apportionable fees are defined as:

" 'Apportionable Fee' means any periodic recurring fee required for licensing or registering vehicles such as, but not limited to, registration fees, license or weight fees."

In accordance with the purposes of the IRP,[14] vehicles registered thereunder are exempt from payment of "ap-

---

[14] "It is the purpose of this agreement to promote and encourage the fullest possible use of the highway system by authorizing the proportional registration of fleets of vehicles, and the recognition of vehicles proportionally registered in other jurisdictions, thus contributing to the economic and social development and growth of the jurisdictions.

". . .

"It is the purpose of this agreement to implement the concept of one registration plate for one vehicle.

"It is the purpose of this agreement to grant exemptions from payment of certain fees when such grants are reciprocal.

"It is the purpose of this agreement to grant reciprocity to proportionally registered fleets of vehicles, and to provide for the continuance of reciprocity granted to those vehicles that are not eligible for proportional registration under the terms of this agreement."

portionable fees" in the other member jurisdictions. Registration under the IRP is completed upon payment of the registration (apportioned) fees.[15] Article III, paragraph A of the IRP governs the calculations of the apportioned registration fees remitted to each member state and generally provides that each signatory to the IRP will receive that portion of its total annual registration fees as is proportionate to the common carrier's vehicle miles traveled in that state:

"A. The registration fee for apportionable vehicles shall be determined as follows:

"1. Divide the in-jurisdiction miles by total miles generated during the preceding year.

"2. Determine the total fees required under the laws of each jurisdiction for full registration of each vehicle at the regular annual or applicable fees, or for the unexpired portion of the registration year.

"3. Multiply the sum obtained under Paragraph 2 of this section by the quotient obtained under Paragraph 1 of this section."

In essence, Yellow Freight claimed that Wisconsin's permit fee is an "apportionable fee" under the IRP and as such was included in the payment of registration fees to this state on the apportioned basis in accordance with the IRP. Thus, Yellow Freight argues that it has complied with the Wisconsin permit fee requirement.

Yellow Freight's argument that permit fees are appor-

---

[15] Article V of the IRP entitled "Registration of Apportionable Vehicles" provides in part:

"A. The Commissioner of the base jurisdiction shall register apportionable vehicles upon application and payment of the registration fees as provided in Articles III and IV.

". . .

"B. Vehicles registered as provided in Section A of this Article shall be deemed fully registered in all jurisdictions where proportionally registered for any type of movement or operation provided the registrant has proper interstate or intrastate authority from the appropriate regulatory agency or is exempt from regulation by the regulatory agency."

tionable under the IRP and thus, its registration in Illinois and Missouri in accordance with the IRP, creates an exemption from having to pay permit fees directly to Wisconsin confuses the issue of whether it has complied with ch. 194, Stats., as this chapter sets forth specific *requirements* for securing and displaying permits in addition to the registration (ch. 341) and certification (sec. 194.23 and 194.04) requirements for common carriers operating in interstate commerce: (1) they must obtain permits and display evidence thereof in the manner described by the department of transportation, (sec. 194.03 (4) and sec. 194.23 (1) ) ; and (2) they are required to purchase permits for each vehicle at a specified fee, (sec. 194.04 (1) (bd),[16] (cm) and (4) ). Sec. 194.07 provides that these *permit* requirements must be met before such carriers may lawfully operate their vehicles in this state:

"**Operations subject to law.** No common motor carrier of property or of passengers or contract motor carrier or private motor carrier shall operate any motor vehicle for the transportation of either persons or property on any public highway in this state *except in accordance with the provisions of this chapter.*" (Emphasis supplied.)

Yellow Freight's argument is that Wisconsin permit fees are "apportionable fees" under the IRP and therefore were included in the apportioned registration fees paid to Wisconsin. However, it is undisputed that Yellow Freight did not obtain and thus did not display a Wisconsin permit stamp on the Uniform Identification Cab Cards assigned to the truck tractors cited. Therefore, the

---

[16] Sec. 194.04 (1) (bd), Stats., provides:

"Except as hereinafter provided each holder of a certificate [of authority to operate in this state] shall also pay an annual permit fee as provided in this section for each motor vehicle operated under such certificate."

record establishes that Yellow Freight violated sec. 194.03(4), Stats., in failing to "obtain permits and display evidence thereof." Thus, the state has sustained its burden of proving a violation of the separate and distinct permit requirement (as contrasted to the certification and registration requirement) set forth in secs. 194.23(1) and 194.04(3).[17]

Yellow Freight also raises two constitutional issues which were not raised in the trial and appellate courts. First, Yellow Freight argues that Wisconsin's twenty dollar permit fee per vehicle set forth in sec. 194.04(4), Stats. 1977 (changed to thirty dollars in ch. 221, sec. 709c, Laws of 1979) constitutes an undue burden on interstate commerce. Second, Yellow Freight contends that its criminal prosecution for a violation of the ch. 194,

[17] As an aside, we note that the state has supplied this court with a document received by the Wisconsin Department of Transportation from Illinois entitled a "Schedule B Recap" which shows the figures that Yellow Freight used to calculate Wisconsin's share of the "apportionable fees" for the vehicles registered under the IRP in Illinois as well as the amount Yellow Freight remitted to Wisconsin. The state has asked this court to take judicial notice of this document and its request has gone unopposed by Yellow Freight. We take judicial notice of this document as it is a public record. See: Denhart v. Waukesha Brewing Co., 21 Wis.2d 583, 596, 124 N.W.2d 664 (1963) (this court took judicial notice of industrial commission records); State v. Fisher, 17 Wis.2d 141, 145, 115 N.W.2d 553 (1962) (judicial notice of records of the highway commission); Department of Taxation v. O. H. Kindt Mfg. Co., 13 Wis.2d 258, 265, 108 N.W.2d 535 (1961) (judicial notice of facts disclosed in the Department of Taxation's files). The Schedule B Recap unequivocally demonstrates that Yellow Freight did not pay apportioned permit fees for that part of its fleet registered in Illinois as it clearly reveals that only the annual registration fees required under ch. 341 were apportioned. Yellow Freight does not dispute this assertion. Thus, Yellow Freight has failed to comply with the ch. 194 permit *fee* requirement insofar as its vehicles registered in Illinois are concerned.

permit requirements violates due process on the grounds of insufficient notice.

This court has consistently held that it:

". . . will not entertain a constitutional issue raised for the first time on appeal *unless there is some compelling reasons for doing so. Milwaukee v. Shoup Voting Machine Corp.* (1972) 54 Wis.2d 549, 196 N.W.2d 694; *Resseguie v. American Mut. Liability Ins. Co.* (1971), 51 Wis.2d 92, 186 N.W.2d 236." (Emphasis supplied) *Sambs v. Brookfield,* 66 Wis.2d 296, 314, 224 N.W.2d 582 (1975).

Further, this court has stated:

"Consideration of a constitutional issue raised for the first time on appeal is discretionary with this court. *Binder v. Madison,* 72 Wis.2d 613, 621, 241 N.W.2d 613 (1976). The court will consider such an issue if it is in the interests of justice to do so, if both parties have had an opportunity to brief the issue *and if there are no factual issues that need resolution. State v. Weidner,* 47 Wis.2d 321, 326, 177 N.W.2d 69 (1970)." (Emphasis supplied.) *Laufenberg v. Cosmetology Examining Board,* 87 Wis.2d 175, 187, 274 N.W.2d 618 (1979).

We have carefully reviewed Yellow Freight's arguments and conclude that there are no compelling reasons for us to decide these issues at this time because they are of a factual nature and since they were not raised in the trial court, the state did not have an opportunity to make a record and present evidence supporting the constitutionality of the ch. 194, Stats., permit requirements. Thus, in view of the state of the record, we decline, in the interests of justice, to decide these issues.

*By the Court.*—The decision of the court of appeals is affirmed and the case is remanded to the circuit court with directions to enter judgment consistent with this opinion.