## LaVerne BROOKS,† Plaintiff-Appellant,

### v.

## LABOR & INDUSTRY REVIEW COMMISSION and Connor Forest Industries, Inc., Defendants-Respondents.

Court of Appeals

*No. 86–0314. Submitted on briefs September 15, 1986.—Decided March 10, 1987.*

(Also reported in 405 N.W.2d 705.)

† Petition to review denied.

For plaintiff-appellant there was a brief submitted by *Daniel W. Stevens* of *Charlton & Esser Law Firm,* Milwaukee.

For defendants-respondents there was a brief submitted by *Melvin Jarchow* of the *Labor & Industry Review Commission,* Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. LaVerne Brooks appeals the denial of his unemployment compensation claim based upon findings by the Labor and Industry Review Commission that he was unable to work and unavailable for work. Brooks claims that the compensation eligibility standard used to determine when a claimant is physically able to or available for work violates the equal protection clause of the fourteenth amend-

ment to the United States Constitution. We affirm the order.

Brooks worked for forty years at Connor Forest Industries before he was laid off from his job as a night foreman. Upon processing Brooks' claim for unemployment benefits, an informal investigation by a deputy of the Department of Industry, Labor and Human Relations at the Rhinelander Job Service office revealed that Brooks had a heart condition that restricted the type of work he could do. DILHR's initial determination denied Brooks' application.

At a hearing before an examiner acting as an appeal tribunal,[1] a certified medical report was received in evidence. That document established that Brooks' work capacity was limited. He had to avoid climbing, stooping, pushing or pulling, and all lifting. His daily work potential was limited to four or five hours, if walking or standing, and six or seven hours, if sitting. The report also disclosed that Brooks had heart disease, that his only work should be sedentary, and that he would never be able to work full time. Although he was willing to take his old job back or take an office job, Brooks had not applied for work.

A job counselor familiar with the Forest County area labor market classified Brooks' most recent job as supervisory and reported that such jobs made up only four percent of the work in that geographical area. Clerical work constituted only about twelve percent of the work available and, given Brooks' physical condition, he would be physically able to perform only about ten percent of all available jobs in the area.

The tribunal, after considering the records and evidence, found that Brooks' physical limitations

---

[1]Section 108.09(3)(a), Stats.

rendered him unable to and unavailable for work in his labor market area within the meaning of sec. 108.04(2)(a), Stats., and Wis. Admin. Code sec. ILHR 128 (1984). The tribunal's decision affirmed that Brooks was ineligible for benefits. Brooks petitioned LIRC for review. LIRC adopted the findings and conclusions of the appeal tribunal as its own, and Brooks was again held to be ineligible. The circuit court reviewed LIRC's decision and affirmed it.[2]

Brooks has raised his equal protection challenge for the first time on appeal. Consideration of a constitutional issue raised for the first time on appeal is discretionary with this court. *State v. Yellow Freight System, Inc.,* 101 Wis. 2d 142, 158, 303 N.W.2d 834, 842 (1981). We will consider such an issue "if it is in the interests of justice to do so, if both parties have had an opportunity to brief the issue and if there are no factual issues that need resolution." *Id.* (quoting *Laufenberg v. Cosmetology Examining Board,* 87 Wis. 2d 175, 187, 274 N.W.2d 618, 624 (1979)).

Section 108.04(2)(a) states:

> [A] claimant is eligible for benefits as to any given week for which he or she earns no wages only if: 1. the individual is *able to work* and *available for work* and is seeking suitable work during that week; .... [Emphasis supplied.]

"[A]ble to work" and "available for work" within the meaning of this section are defined by Wis. Admin. Code sec. ILHR 128.01(2) (1984). That section states:

[2]The standards of judicial review for worker's compensation proceedings are made applicable to unemployment compensation proceedings pursuant to sec. 108.09(7)(b), Stats.

A claimant is not considered to be able to work or available for work in any given week if:

....

(b) The claimant's physical condition or personal circumstances over which the claimant has no control limit the claimant to less than 15% of the opportunities for suitable work including all such jobs whether vacant or filled, in the claimant's labor market ....

Construction of administrative rules is governed by the principles that apply to construction of statutes. *Basinas v. State,* 104 Wis. 2d 539, 546, 312 N.W.2d 483, 486 (1981).

■

When challenging the constitutionality of a statute, the challenger has a heavy burden. In *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973), the supreme court said:

It is not enough that [the challenger] establish doubt as to the act's constitutionality nor is it sufficient that [the challenger] establish the unconsitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts.

■

The purpose of the unemployment compensation statute is to "minimize the loss of income when an employee involuntarily is out of work through the

fault or misfortune of his employer." *Roberts v. Industrial Commission,* 2 Wis. 2d 399, 403, 86 N.W.2d 406, 408 (1957). Despite the purpose of the Act, "public policy declarations of the act may not be used to supersede, alter or modify its specific provisions." *Salerno v. John Oster Manufacturing Co.,* 37 Wis. 2d 433, 441, 155 N.W.2d 66, 70 (1967).

We agree with LIRC's argument that the legislature may limit the unemployment compensation program so that it can forecast its impact on tax revenues necessary to fund benefits. The fiscal integrity of a state's compensation fund is a legitimate concern of the state. *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 493 (1977); *see Spielmann v. Industrial Commission,* 236 Wis. 240, 252, 295 N.W. 1, 7 (1940).

The United States Congress, in establishing and amending the Federal Unemployment Tax Act (FUTA), 26 U.S.C. sec. 3301–3311, has established identifiable classes of claimants and accorded them different treatment.[3] States that do not comply with these federal provisions can be held to be out of conformity with the result that the employers in the states lose the benefit of tax credits. *Id.; see Leissring v. DILHR,* 115 Wis. 2d 475, 484, 340 N.W.2d 533, 537 (1983).

The Wisconsin Legislature, in accordance with the federal directive, has recognized in the Unemployment Compensation Act certain identifiable classes of claimants and accorded them different treatment. Some of these classes are individuals who quit their

---

[3]26 U.S.C. sec. 3304.

jobs,[4] those who are discharged[5] or suspended for misconduct connected with their employment,[6] those who refuse offers of work or fail to apply for work when notified by a public employment office,[7] recipients of vacation,[8] dismissal,[9] pension,[10] or temporary disability payments,[11] persons engaged in agriculture,[12] canning,[13] and professional sports,[14] and those who have engaged in particular types of private and public employment.[15]

Section 108.14, Stats., authorizes DILHR to adopt and enforce all rules and regulations found necessary or suitable to carry out the provisions of ch. 108, the Unemployment Compensation Act.

■

Here, DILHR has furthered its goal of fiscal stability by paying benefits only to those persons available for at least fifteen percent of the suitable jobs in the labor market. We conclude that this restriction does not deny equal protection of the law. The standard of constitutionality in the area of social welfare legislation was recounted in *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 175

[4]Section 108.04(7), Stats.
[5]Section 108.04(5), Stats.
[6]Section 108.04(6), Stats.
[7]Section 108.04(8), Stats.
[8]Section 108.05(4), Stats.
[9]Section 108.05(5), Stats.
[10]Section 108.05(7), Stats.
[11]Section 108.04(12)(e), Stats.
[12] Section 108.02(15)(k)1, Stats.
[13] Section 108.02(15)(k)14, Stats.
[14]Section 108.04(19), Stats.
[15]Section 108.02(15), Stats.

(1980) (quoting *Dandridge v. United States,* 397 U.S. 471, 485 (1970)) [citations omitted]:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.'

"A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Dandridge,* 397 U.S. at 485 (quoting *McGowan v. Maryland,* 366 U.S. 420, 426 (1961)).

Wisconsin endorsed a similar equal protection test in *Marmolejo v. DILHR,* 92 Wis. 2d 674, 684, 285 N.W.2d 650, 654 (1979) (quoting *Harris v. Kelley,* 70 Wis. 2d 242, 255, 234 N.W.2d 628, 633 (1975)): "[A] classification, though discriminatory, is not arbitrary or capricious, and therefore not violative of the equal protection requirement, if any statement of facts reasonably can be conceived which will sustain it." The rules challenged by Brooks cannot be termed "arbitrary or capricious," but rather create a reasonably-based classification as described in *Dandridge.* They are part of a larger scheme to ensure a solvent compensation fund. While we are convinced that Brooks deserves better after forty years' labor at Connor, it is outside our institutional function to provide him unemployment compensation by voiding

rules adopted within the broad boundaries of legislative prerogative.

*By the Court.*—Order affirmed.