OOSTBURG STATE BANK, Plaintiff-Respondent-Petitioner,

v.

# UNITED SAVINGS & LOAN ASSOCIATION, Defendant-Appellant, AUTO-OWNERS INSURANCE COMPANY, Defendant.

Supreme Court

*No. 84–472. Argued April 1, 1986.—Decided April 30, 1986.*

(Also reported in 386 N.W.2d 53.)

4

For the plaintiff-respondent-petitioner there were briefs by *James O. Conway, Arthur J. Olsen* and *Chase, Olsen, Kloet & Gunderson,* Sheboygan, and oral argument by *Arthur J. Olsen.*

For the defendant-appellant there was a brief by *Edward A. Dudek, Thomas J. Arenz, Michael J. Lund* and *Frisch, Dudek and Slattery, Ltd.,* Milwaukee, and oral argument by *Edward A. Dudek.*

DAY, J.   This is a review of a published decision of the court of appeals, *Oostburg State Bank .v. United Savings & Loan,* 125 Wis. 2d 224, 372 N.W.2d 471 (Ct. App. 1985), reversing a default judgment and a decision and order of the Circuit Court for Sheboygan county, Honorable John Bolgert, circuit judge, and remanding the matter for further proceedings. The decision and order denied United Savings & Loan Association's (Defendant's) motions to vacate and relieve it from the orders of January 11, 1984, striking its answer and granting Plaintiff's motion for default judgment; to extend the time in which to answer; and, to relieve it from the default judgment granted January 11, 1984, and entered January 18, 1984. The issue on review is: Did the Defendant serve its answer within

the time limits prescribed by Oostburg State Bank (Plaintiff) in its letter terminating the "courtesy agreement" between the attorneys, thereby making it error for the trial court to grant the default judgment. We hold that the Defendant's answer was timely, and therefore, the trial court erroneously granted the default judgment.

The material facts are undisputed. On September 29, 1983, Plaintiff filed and served Defendant with a summons and complaint alleging damages in the amount of $302,817.15.[1] On October 12, 1983, Attorney James O. Conway (Conway), one of the attorneys for the Plaintiff, received a telephone call from Attorney Thomas Klug (Klug). Klug informed Conway that his firm, Borgelt, Powell, Peterson and Frauen, S.C., had been retained by the Defendant and requested an extension of time to answer the complaint. Conway orally agreed to an extension, but no time limit was placed on the extension. Klug confirmed the oral agreement in a "blind postscript" to a letter received by Conway on October 15, 1983, which stated: "We are in the process of preparing a responsive pleading to the Complaint in this matter. This will confirm our telephone conversation of October 12, 1983 at which time you were gra-

---

[1] This action arose out of an alleged "check-kiting" scheme engaged in by a customer of the Defendant. When the Defendant learned of the alleged illegal operation, it stopped payment on the checks that it had issued to that customer. The customer deposited the checks in its checking account with the Plaintiff. Plaintiff allowed the customer to draw against the checks before it presented such checks to the Defendant's bank, Citizens Bank of Sheboygan, for collection. Plaintiff claims to be a "holder in due course" of the checks. The facts of this matter are not before us on this appeal.

cious enough to grant us a *brief extension of time in which to responsively* plead." (Emphasis added.)

On November 30, 1983, a hearing was held on the motion of Plaintiff's bonding agent, Auto-Owners Insurance Company, to intervene in the lawsuit. Attorney Steven G. Mocarski (Mocarski), a member of Klug's law firm, appeared on behalf of the Defendant. At the hearing, Conway requested that Mocarski file Defendant's answer as soon as possible. Conway repeated this request in a letter to Mocarski, dated December 6, 1983, which stated, "I would appreciate receiving a copy of your Answer as soon as possible." Subsequently, on December 15, 1983, Conway contacted Mocarski by telephone and requested that the answer be filed as soon as possible.

In a letter dated and mailed on December 21, 1983, which was addressed to Mocarski and Klug, Conway acknowledged the extension agreement, and recited his previous efforts to obtain Defendant's answer. He further stated, "I will be compelled to move the Court for entry of a Default Judgment unless I receive your Answer within ten (10) days." It is undisputed that Klug did not receive the letter until December 27, 1983.[2]

On January 3, 1984, Conway filed a notice of motion and motion for default with a supporting affidavit, claiming that more than ten days had elapsed. Copies of these papers were received by Klug's firm on January 4, 1984, and came to Klug's attention on January

---

[2] On the day the letter was received by the law firm, December 27, 1983, Mocarski brought it and the entire file to Klug. At that time he advised Klug that he would be leaving the firm at the end of the week. Mocarski left on December 30, 1983.

7

5, 1984. The motion hearing was set for January 11, 1984.

During a January 6, 1984, telephone conversation, Klug informed Conway that the answer was prepared and would be served by mail that day. Conway advised Klug he would not withdraw the motion for default judgment. Defendant's answer was served on the Plaintiff, by mail, on January 6, 1984, and was received by Conway and filed with the court by Klug on January 9, 1984. On January 10, 1984, Klug spoke with Attorney Arthur J. Olsen (Olsen), who was in charge of Plaintiff's case during Conway's absence, and explained that there had been some confusion between himself and Mocarski in handling the file, and that Mocarski left the firm on short notice. Olsen would not withdraw the motion for default judgment.

At the January 11, 1984 hearing, Olsen argued that no excusable neglect was shown for Defendant's untimely answer, and that the answer should be dismissed or disregarded. In response, Klug apologized and took responsibility for any perceived delay or discourtesy. The trial court granted the motion for default judgment, finding that Defendant was in default and that no good cause or excusable neglect for the default was shown.

Klug promptly filed motions to reconsider, to extend the time to answer, and to allow the answer filed January 9, 1984, to stand as Defendant's answer. On January 18, 1984, the trial court rendered its oral judgment, striking Defendant's answer and granting Plaintiff's motion for default judgment.

Defendant retained additional counsel and filed motions to extend the time to answer and to accept the answer filed on January 9, 1984; to vacate and relieve

Defendant of the orders entered January 11, 1984; and, to relieve Defendant of the judgment rendered January 18, 1984. Defendant also filed affidavits claiming that its answer was timely, that the notice terminating the extension agreement was inadequate, and that if the answer was late, it was due to excusable neglect.

A hearing was held on the Defendant's motions. In its decision, dated March 16, 1984, the trial court denied Defendant's motions to set aside the default judgment and to extend the time to answer. It found that the extension agreement was not a valid contract, and was at most a courtesy agreement, imposing only ethical obligations on the parties to the agreement. Such agreements, stated the court, are not valid nor given standing by the court unless the court is advised of and approves of the agreement. Section 807.05, Stats.[3] The court concluded that Conway had a right to insist that the answer be filed upon the expiration of a reasonable time following the agreement. While Conway had no legal obligation to give the ten day notice, the court held that such notice was reasonable.

The trial court also found that Defendant's answer, filed on January 9, 1984, was late under sec. 801.15(1) and (5), Stats.[4] Apparently, the trial court

---

[3] Section 807.05, Stats., provides:

"**807.05 Stipulations.** *No agreement, stipulation, or consent* between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court and entered in the minutes or recorded by the reporter or made in writing and subscribed by the party to be bound thereby or the party's attorney."

[4] Section 801.15(1) and (5), Stats., provides:

"**801.15 Time.** (1) Notwithstanding ss. 985.09 and 990.001(4),

9

used the date of mailing the termination letter, December 21, 1983, rather than the date of receipt, December 27, 1983, in its computations to find that the answer was due on January 4, 1984.[5]

The court of appeals reversed the trial court's decision and vacated the default judgment on the grounds that Defendant's answer was served and filed within the period prescribed in the December 21, 1983 letter. It concluded that the courtesy agreement was binding because it conformed to sec. 807.05, Stats., and because the parties had an ethical obligation to abide by their agreement.

The court of appeals applied contract law and civil procedure rules to construe the agreement and the termination notice. It held Conway could terminate the

---

in computing any period of time prescribed or allowed by chs. 801 to 847, by any other statute governing actions and special proceedings, or by order of court, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday. When the period of time prescribed or allowed is less than 7 days, Saturdays, Sundays and legal holidays shall be excluded in the computation. As used in this section "legal holiday" means any state-wide legal holiday provided in s. 895.20. . . .

" (5) Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served by mail, 3 days shall be added to the prescribed period."

[5] There appears to be an error in the court's computation. Under sec. 801.15(1), Stats., the first day of the act is excluded and the last day of the period is included, unless it is a Saturday, Sunday, or a legal holiday, and under sec. 801.15(5), three days are added to the prescribed period if service is by mail. Thus, the thirteen day period should run from December 22, 1983, the day after the mailing of the termination letter, to January 3, 1984.

agreement only after giving Klug reasonable notice of such intent, and that the ten day notice was reasonable. In contrast to the trial court, the court of appeals held that the ten day period ran from December 28, 1983, which was the day after Klug's receipt of the termination notice, to and included January 6, 1984, the day the answer was served. Alternatively, the court of appeals held that the trial court abused its discretion in finding inexcusable neglect and granting default. Plaintiff petitioned this court for review of the court of appeals' decision and review was granted.

The decision to grant or vacate a default judgment is within the discretion of the trial court.[6] *Hollingsworth v. American Finance Corp.*, 86 Wis. 2d 172, 181, 271 N.W.2d 872 (1978); *Maier Const., Inc. v. Ryan*, 81 Wis. 2d 463, 472, 260 N.W.2d 700 (1978); *Abdella v. Catlin*, 79 Wis. 2d 270, 274, 255 N.W.2d 516 (1977). However, the law views default judgments with disfavor, and "prefers, whenever reasonably possible, to afford litigants a day in court and a trial on the issues." *Dugenske v. Dugenske*, 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977); *see also, Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 469, 326 N.W.2d 727 (1982); *Maier Const.*, 81 Wis. 2d at 472. An appellate court will not reverse a discretionary decision unless the trial court has abused its discretion. This court will find an abuse of discretion if the record shows that the trial court failed to exercise

---

[6] Section 806.02, Stats., provides:

"**806.02 Default judgment.** (1) A default judgment *may be rendered* as provided in subs. (1) to (4) if no issue of law or fact has been joined and if the time for joining issue has expired. Any defendant appearing in an action shall be entitled to notice of motion for judgment." (emphasis added).

its discretion, the facts fail to support the trial court's decision, or this court finds that the trial court applied the wrong legal standard. *Hedtcke,* 109 Wis. 2d at 471–472; *see also, Barstad v. Frazier,* 118 Wis. 2d 549, 554, 348 N.W.2d 479 (1984); *First Wis. Nat'l. Bank of Oshkosh v. KSW Inv., Inc.,* 71 Wis. 2d 359, 364, 238 N.W.2d 123 (1976); *Midwest Developers v. Goma Corp.,* 121 Wis. 2d 632, 650, 360 N.W.2d 554 (Ct. App. 1984). We conclude that the trial court misapplied the law in concluding that Defendant's answer was late, thereby abusing its discretion.

Conway and Klug entered into a courtesy agreement in which Conway agreed to a "brief extension of time" for Klug to file Defendant's answer. The agreement was indefinite as to its duration. Klug relied on the agreement and did not file Defendant's answer within the statutory time period. This court is well aware of the practice by attorneys of extending the statutory time limits on procedural matters. This is a common practice and should not be condemned. *Giese v. Giese,* 43 Wis. 2d 456, 462, 168 N.W.2d 832 (1969).[7] It would be unreasonable to allow a party to a courtesy agreement to ignore the existence of such agreement to the detriment of the other party.

The Supreme Court Rules place an ethical obligation on the parties to a courtesy agreement to abide by their agreement. SCR 20.34(3)(t)(1986), provides in part:

"A lawyer should be courteous to opposing counsel and should accede to reasonable requests

---

[7] In *Giese,* 43 Wis. 2d at 462, this court stated that such agreements constitute the basis for excusable neglect.

regarding court proceedings, settings, continuances, waiver of procedural formalities and similar matters which do not prejudice the rights of his or her client. *He or she should follow local customs of courtesy or practice, unless he or she gives timely notice to opposing counsel of his or her intention not to do so.*" (Emphasis added.)

Thus, we conclude that the parties are required to abide by the courtesy agreement.

In contrast to the trial court's decision, the court of appeals held that the courtesy agreement was binding on the parties to the agreement under sec. 807.05, Stats. Since we have already determined that the parties are required to abide by their agreement, on other grounds, we need not decide whether the agreement is binding under sec. 807.05.

While we recognize and approve of the widespread use of courtesy agreements by attorneys to extend procedural time limits, we also recognize that it is the trial judge that controls the docket, and should be informed of the existence of these agreements. As a matter of good practice, we recommend that such agreements be confirmed in writing, and that a copy of the agreement be sent to the circuit court.

We are confronted with an extension agreement that is indefinite as to duration, and with a letter terminating that agreement which does not set forth a definite date by which the answer must be filed, but rather, states that the answer must be received "within ten (10) days." This decision is only applicable to those agreements that are ambiguous as to when the time period in the termination notice commences. Conway could have specified that the answer be received within ten days of the date of the letter. If this were the case,

13

we would have to determine if it constituted reasonable notice. We are not confronted with this situation.

Plaintiff argues that at the default hearing, the trial court correctly ruled that the courtesy agreement had ended, that the answer was late, and that there was no excusable neglect. At oral argument, Plaintiff claimed that the court of appeals erred in selectively applying contract law and civil procedure rules to construe the courtesy agreement. While Plaintiff does not agree with the trial court's use of sec. 801.15, Stats., to compute the ten day period, it argues that the trial court properly exercised its discretion in granting the default judgment, and in denying Defendant's motions for relief from the judgment. Defendant argues that the court of appeals correctly held that Klug had ten days from receipt of the termination letter to serve its answer, and that the answer was timely. Additionally, Defendant argues that the ten day termination notice was unreasonable. Defendant also argues that the court of appeals was correct in finding that the trial court abused its discretion.

Neither party disputes the fact that the grantor of the courtesy is required to give the other party reasonable notice of the termination of such agreement. We need only look to SCR 20.34(3)(t), to find that a lawyer should follow local customs of courtesy, unless he or she gives "timely notice" of their intention not to do so. Klug relied on the existence of the extension, and was entitled to reasonable notice of its termination. The record shows that Conway asked Mocarski for Defendant's answer "as soon as possible" on three occasions. While this shows that Conway wanted the answer, it does not show that he intended to terminate the agree-

ment. It was not until the December 21, 1983 letter that Klug was notified of Conway's intention to terminate the agreement. The trial court erred in concluding that Conway had no legal obligation to send the December 21, 1983 letter.

Conway's termination notice provides: "I will be compelled to move the Court for entry of a Default Judgment unless I receive your Answer within ten (10) days." We apply what we deem to be reasonable rules of construction to this ambiguous notice to determine whether the Defendant answered within the prescribed time limitation.[8] While we, like the court of appeals, apply contract principles to construe this agreement, we do not elevate courtesy agreements to the level of formal contracts. We are simply applying rules of construction that are rooted in common sense.

The notice is ambiguous as to when the prescribed period commenced, the date of mailing the termination letter or the date of its receipt. We conclude that the trial court misapplied the law by computing this period from the date of mailing the letter.

Klug was justified in relying on Conway's extension agreement in the absence of any notice of Conway's intent to terminate the agreement. This is analagous to the contract principle that revocation of an offer is not effective until received by the offeree. "[T]he offeree is justified in relying on the offeror's *manifested intention* regardless of any *undisclosed* change in the offeror's state of mind." Restatement (Second) Contracts sec. 42 comment b (1979) (emphasis added). Here, Conway did not telephone Klug on December 21, 1983, and request that the answer be received within ten

---

[8] Since we conclude that Defendant's answer was timely, we need not decide if the ten day period was reasonable notice.

15

days, but rather, he made this request in a letter. Since Conway's intent was not manifested to Klug until Klug received the letter on December 27, 1983, the prescribed period should have commenced as of Klug's receipt of the letter. In *Oldfield v. Chevrolet Motor Co. of Nebraska,* 198 Iowa 20, 199 N.W. 161 (1924), the court was confronted with a contract that required "five days written notice" of cancellation. It concluded that the "notice required by the contract began to run, not from the date of the letter or the date of its deposit in the mail, but from the date of its receipt by appellant. . . ." *Id* at 162.

To calculate when the ten day period concluded, we, like the trial court and the court of appeals, apply sec. 801.15(1), Stats. By doing so, we eliminate any confusion, such as whether the date of receipt is included or excluded, that the recipient might have in determining when the period ceased. Section 801.15(1), provides in part: "the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday."

It is undisputed that Klug received the termination letter on December 27, 1983. Applying sec. 801.15(1), Stats., the first day of the period was December 28, 1983, and the tenth day of the period was January 6, 1984. The answer was served on Conway, by mail, on January 6, 1984. Service by mail is complete upon mailing. Section 801.14(2).

We hold that Defendant's answer was timely under the termination letter. The answer was served on January 6, 1984, when it was deposited in the mail. Serving signifies delivery to the person to whom the

item is to be delivered. *Black's Law Dictionary* 1227 (5th ed. 1979). The trial court abused its discretion in granting a default judgment and failing to vacate that judgment when, in fact, no default had occurred. Defendant's answer was made within the prescribed period.

*By the Court.*—The decision of the court of appeals is affirmed.