IN the MATTER OF the MARRIAGE OF: Robert
E. TIEBERG, Petitioner-Appellant,

v.

Paula L. (Tieburg) EHLKE, Respondent.

Court of Appeals

*No. 85–2204. Submitted on briefs August 27, 1986.—Decided
February 11, 1987.*

(Also reported in 404 N.W.2d 84.)

For the plaintiff-appellant the cause was submitted on the briefs of *Joseph Schiro* of Milaukee.

For the respondent a brief was filed by *Patricia Jones D'Angelo,* of Waukesha, guardian ad litem for the minor child.

Before Scott, C.J., Brown, P.J., and Hansen, Reserve Judge.

SCOTT, C.J. Robert E. Tieberg appeals from a post-judgment order transferring custody of the parties' minor child, Bobby, from him to his former wife, Paula L. (Tieberg) Ehlke, and requiring him to pay support. Robert contends that sec. 767.32(2), Stats., as applied in *Millikin v. Millikin,* 115 Wis. 2d 16, 23–27,

339 N.W.2d 573, 576–78 (1983), governs all transfers of custody and requires the moving party, Paula, to produce substantial evidence demonstrating that removal of a child is necessary to the child's best interest. Because we conclude that the trial court was not required by sec. 767.32(2) to find that the change of custody was *"necessary"* to the child's best interest, we affirm.

Robert and Paula were divorced on August 15, 1974. The judgment of divorce granted sole custody of their minor child to Paula. Two years later, in August 1976, the parties stipulated to the entry of an order transferring sole custody of Bobby to Robert. The purpose of the change was to give Robert greater input into decisions regarding Bobby's treatment and placement for problems related to developmental disabilities.

Bobby resided with Robert until he entered residential treatment in May 1979. He was subsequently discharged in September 1983 and returned to live with Robert. On December 31, 1983, the parties informally agreed that Bobby would reside with Paula and Robert would have weekend visitations. Approximately ten and one-half months later, on November 7, 1984, Paula brought an order to show cause seeking a change of sole custody and requesting that the court order Robert to pay child support. The following weekend, Robert picked Bobby up for visitation and failed to return him to Paula. Bobby resided with Robert until the trial court issued an interim order on January 15, 1985 placing Bobby with Paula pending a hearing on the custodial issue.

After hearing testimony from several expert witnesses, as well as the recommendations of the guardian ad litem, the trial court transferred sole

custody to Paula and ordered support based on the statutory guidelines of sec. 767.395(3), Stats. (1983–84).[1]

The trial court held that Robert had relinquished his responsibilities as legal custodian of Bobby by voluntarily placing the child with Paula for ten and one-half months.[2] The court determined that Robert's actions estopped him from asserting that Paula, as the moving party, now had the burden under *Millikin* of establishing by substantial evidence that the change of custody was "necessary" to Bobby's best interest. The court concluded that the issue of custody should be based only upon the standard of the "best interest of [the child]."

Custody determinations made by a trial court are given great weight upon review. *Allen v. Allen,* 78 Wis. 2d 263, 271, 254 N.W.2d 244, 249 (1977). An appellate court will not reverse the custody determination of a lower court absent an abuse of discretion. *Gould v. Gould,* 116 Wis. 2d 493, 498, 342 N.W.2d 426, 429 (1984). The application of an erroneous legal standard is an abuse of discretion. *Oostburg State Bank v. United Sav. & Loan Ass'n,* 130 Wis. 2d 4, 11–12, 386 N.W.2d 53, 57 (1986).

---

[1]Reserve Judge David L. Dancey was substituted for Judge John P. Buckley prior to the hearing and entry of the order which is the basis for this appeal.

[2]This holding of the trial court implicitly recognizes that legal custody of a child in this state involves both rights and duties. Legal custody is defined by sec. 767.24(1)(d), Stats., which invokes sec. 48.02(12), Stats., and includes, among other things, "the right and duty to protect, train and discipline the child, and to provide food, shelter, legal services, education and ordinary medical and dental care."

The 1976 court order transferred sole custody of Bobby to Robert. Although the trial court was aware of the holding of *Millikin* when it modified the 1976 court order, it declined to apply it. The court reasoned that Robert had given up the protection of *Millikin* when he abandoned the child for ten and one-half months. The trial court held that such conduct by Robert estopped him from asserting the *Millikin* standard.

While we disagree with the trial court's application of estoppel,[3] we nevertheless affirm because we agree with the court's ultimate conclusion that it was not required to focus on "the necessity for removal" under *Millikin* when deciding the custody issue in this case.[4]

Section 767.32(2), Stats., in relevant part states:

> Whenever the welfare of any such child will be promoted thereby, the court granting such judgment shall always have the power to change the care and custody of any such child, either by giving it to or taking it from any parent, relative or agency. ... Any modification of a custody order which *removes* a child from the care of a parent

---

[3]Section 767.32(2), Stats., forbids custody modifications in certain circumstances "absent 'substantial evidence supporting a change of custody' showing 'such removal is necessary to the child's best interest.'" *Millikin v. Millikin,* 115 Wis. 2d 16, 23, 339 N.W.2d 573, 576 (1983) (quoting sec. 767.32). Even in the face of a claim of estoppel against Robert, it is incumbent upon the trial court to *sua sponte* assert the proper standard on behalf of the child. The statute is intended to protect the child's best interest, not parental interests, unless they coincidentally coincide.

[4]Appellate courts may approve the actions of trial courts for reasons other than those relied upon below. *Badtke v. Badtke,* 122 Wis. 2d 730, 735, 364 N.W.2d 547, 549 (Ct. App. 1985).

having custody of the child shall be based on a finding that such *removal* is necessary to the child's best interest as shown by substantial evidence supporting a change in custody under s. 767.24(2). [Emphasis added.]

The foregoing statute empowered the trial court to "change the care and custody" of Bobby upon finding "the welfare" of Bobby was "promoted thereby." The only provision which limits a trial court's authority to change custody pertains to those situations where the court is ordering a "modification of a custody order which *removes a child from the care of a parent* having custody." Section 767.32, Stats. (emphasis added). In such situations, the court must find that removal is necessary to the best interest of the child as shown by substantial evidence. The higher standard is only applicable to those situations where the parent who has sole custody also has been providing "care" on a day-to-day basis.[5]

The language of sec. 767.32(2), Stats., "reflects the legislature's intent to forbid custody modification absent 'substantial evidence supporting a change of custody' showing 'such *removal* is necessary to the child's best interest.'" *Millikin,* 115 Wis. 2d at 23, 339 N.W.2d at 576 (quoting sec. 767.32(2)) (emphasis added). In construing a statute, we are to use the common and ordinary meaning of words chosen by the legislature. The common and ordinary meaning "may

---

[5]We are aware that the holding of *Westrate v. Westrate,* 124 Wis. 2d 244, 369 N.W.2d 165 (Ct. App. 1985), does not recognize court-ordered separation of legal custody and physical placement. However, we do not read *Westrate* as preventing this court from recognizing that the parties have, in fact, separated custody and placement for almost one year.

be established from the definition given in a recognized dictionary." *State v. Mauthe,* 123 Wis. 2d 288, 298, 366 N.W.2d 871, 876 (1985). "Remove" means "to change or shift the location, position, station, or residence" of someone or something to a specified place. Webster's Third New International Dictionary 1921 (1976). We conclude that the legislature only intended to impose the higher standard, requiring a showing by substantial evidence that "the change of custody was necessary," in those situations where the child is residing with the parent from whom the change of custody is sought.[6]

The trial court questioned Robert's motives in contesting the transfer of custody. The court was aware that Robert freely consented to the physical placement of Bobby with Paula for over ten months and that he did not resist this placement until Paula requested the change of custody and support. It was only then that Robert exercised his legal rights under the existing court order and unilaterally terminated

---

[6]Our interpretation of sec. 767.32(2), Stats., is consistent with the holding of *Millikin* which discusses the change of custody issue in the following terms:

> "[N]ecessary" does not mean that the child need be in impending or immediate danger of life, health, or safety. Rather, we view "necessary" as implying that the change of custody itself is needed because the *current custodial conditions* are harmful in some way to the best interest of the child. Such harm should not be found, however, simply because the custodial parent cannot match the *better general living conditions* offered by the parent seeking the change of custody. In order for *better living conditions* to become significant, they must rectify a *condition in the current custodial arrangement* that is harmful to the child's best interest. [Emphasis added.]

Millikin, 115 Wis. 2d at 23–24, 339 N.W.2d at 576.

the informal placement with Paula and took Bobby to live with him. We conclude that to require proof by the higher standard on the facts of this case would be to place form over substance and would be totally inconsistent with the legislative policy of protecting Bobby in his current home environment. The trial court properly applied the best interest of the child standard.

■

Robert also argues on appeal that the trial court abused its discretion in using the percentage guidelines under sec. 767.395(3), Stats. (1983–84), to arrive at the amount of support. From our review of the record, we are satisfied that the trial court could, in its discretion, set the amount of support by following sec. 767.25(1p), Stats. (1983–84), which provided:[7] "In lieu of determining child support payments under sub. (1m), the court may order either or both parents to pay an amount determined by using the percentage standards adopted under sec. 767.395(3)."[8]

The order of the trial court is affirmed.

*By the Court.*—Order affirmed.

---

[7]The statutory language and the trial court's discretion have been changed somewhat in the current version of the statutes. *See* secs. 46.25(9)(a) and 767.25, Stats. These changes are not relevant to our disposition of this case.

[8]Robert challenges the constitutionality of sec. 767.25(1p), Stats. (1983–84), for the first time on appeal. Generally, we do not review issues raised for the first time on appeal. *Wirth v. Ehly,* 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980). Because Robert has failed to give notice to the attorney general, as required by sec. 806.04(11), Stats., and because we do not find a compelling reason to consider the issue raised, *State v. Yellow Freight Sys., Inc.,* 101 Wis. 2d 142, 158, 303 N.W.2d 834, 842 (1981), we find no need to exercise our discretion and reach this issue.

ROBERT W. HANSEN, R.J. *(concurring)*. Legal custody of a child in this state involves both rights and duties. It involves "the right and duty to protect, train and discipline the child, and to provide food, shelter, legal services, education and ordinary medical and dental care." Sec. 48.02(12), Stats.; *see also* sec. 767.24(1)(d), Stats.

In the case before us, the child of the parties, a developmentally disabled teenager, afflicted with cerebral palsy, went, after four years of institutional treatment, to live with his father, his legal custodian. After four months marked by problems, the father took the son to the home of the mother and left him there. Some days later, the father telephoned the mother to tell her that their son could stay with her as he wanted to do. The father wanted only to have weekend visiting rights. The mother agreed. No court approval was sought despite the fact that no offer was made by the father or agreed to by the parties as to regular payments by the father for support of the child.

This arrangement, shifting the duties of a custodian to the noncustodian mother, apparently worked harmoniously and well. For over ten months, the child of the parties lived with his mother at her home, attended school regularly and evidently had no adjustment difficulties. However, this custodial arrangement ended when the mother brought a motion for custody and contributions by the father to the support of the child. Four days later, after being served with papers, the father, saying that the mother had "gone too far," took the son, Bobby, from the home of the mother to his home. There he stayed for some weeks, until the original trial judge in this case entered a temporary custody order restoring the child to the

home of the mother. He has resided with his mother for nearly two years under that order. Child support payments ordered to be paid by the father were included in the temporary custody order. And it is to be noted that the trial court found that the father "has paid relatively little for support during the time since this order to show cause proceeding was commenced."

In this case, granting the mother's motion for change of custody and court-ordered contributions by the father to the support of the child has the son return to the home and care of the mother, where he has been now for nearly three years. It is likewise clear that denial of the mother's motion would have the child go to live at the home of the father, where he has spent only four weeks in the past nearly three years. In making its choice between these custody awards, the trial court was required to consider the factors mandated by sec. 767.24(2), Stats. *See* sec. 767.32(2), Stats. Here are those mandated factors required to be considered, followed by the findings of the trial court as to each set forth in parentheses:

(a) *The wishes of the ... parents as to custody;* ("Here, Robert [the father] ... largely relinquished his responsibilities to the non-custodial parent, Paula ....")

(am) *The wishes of the child as to his ... custody;* ("His [the child's] ... preference for custodial placement seems to be that he remain with his mother ....")

(b) *The interaction and interrelationship of the child with his ... parents;* ("Robert's [the father's] interaction with Bobby [the child] tends to be negative and rejecting of Bobby.")

237

(c) *The child's adjustment to the home, school, religion and community;* ("Robert [the father] is unrealistic in his perception of Bobby's [the child's] capability.")

(d) *The mental and physical health of the parties [and] the minor children ...; [and]*

(e) *The availability of public or private child care services; and* ("The continued educational needs and the continued psychological counseling needs of Bobby [the child] can be set in either custodial setting."[1] )

(f) *Such other factors as the court may in each individual case determine to be relevant.* [Emphasis added.] ("By his actions in voluntarily placing Bobby [the child] with Paula [the mother] for a ten and one-half month period ... and by his resumption of physical custody of Bobby basically because of a dispute over what support he should pay Paula for Bobby's care, he has waived and relinquished his right ... and is estopped from asserting that Paula has the moving party's burden ....")

These "other factors" found by the court to establish waiver and create estoppel may not accomplish that, but they do establish the harmfulness to the child's best interest in the present custodial arrangement. *See Millikin v. Millikin,* 115 Wis. 2d 16,

---

[1]It is to be noted as to factors (c) and (e) that the trial court in its decision referred to the testimony of expert witnesses, particularly stressing and completely agreeing with the clinical psychologist whose opinion it was that Bobby's best interest would be served by awarding legal custody to the mother. The trial court stated: "Her [the psychologist] opinion appears well-founded based on the facts in the case. ..." No testimony by any of the expert witnesses faulted in any way the custodial care given by the mother or the child's adjustment while living with the mother.

23–24, 339 N.W.2d 573, 576 (1983); *see also Gould v. Gould,* 116 Wis. 2d 493, 500, 342 N.W.2d 426, 430 (1984). The requirements of sec. 767.24(2), Stats., and *Millikin* and *Gould* for granting change of custody are here clearly met.

Of course, there can be no dispute that the findings of fact made by the trial court as to the factors it was required by statute to consider, establish that "it is in Bobby's [the child's] best interest that legal custody be now granted to Paula [the mother] and not to Robert [the father]." It is also this writer's opinion that the harmfulness in the present custodial condition, required by *Millikin* and *Gould* to be found for a change in custody, is also overwhelmingly established by the same findings. Here, the custodian father, when he turned the child over to the mother's care, made no offer or firm commitment to the child's support payments. But this absence of a fixed and firm commitment by the father for child support, while itself harmful to the child, pales alongside the circumstances of the father's taking the child back from the home of the mother. This use of the child as a pawn in the dispute over support payments surely establishes the harmfulness in the existing custodial arrangements to the child, which meets the burden of proof placed upon a moving party by sec. 767.24(2), Stats.

So, the writer would affirm, holding that requirements of both the statute, sec. 767.24(2), Stats., and *Millikin* and *Gould* have been met. The writer would, therefore, affirm the granting of the mother's motion for change of custody and affirm the setting by the trial court of contributions to the support of the child by the father. The trial court reached this result by the route of waiver and estoppel, holding that, by turning over the duties of day-to-day care and control

of the child to the noncustodial mother and then taking back the child when and because the mother sought court-ordered help in supporting the child, the father waived his right and was estopped from placing upon the noncustodial mother the burden of proving that a change of custody here was "necessary." While the concepts of waiver and estoppel are awkwardly, if at all, applicable in custody determinations where, after all, the focus is upon the well-being of the child, not the wishes or rights of the custody claimants, the factors upon which the trial court found waiver and estoppel are here highly relevant to determining whether the best interest of the child requires and makes necessary the award of custody to the mother.

In holding that custody of Bobby should be awarded "as if it were an initial [sic] litigated determination," the trial court described the measuring stick in this state for such initial determination as "the standard of doing what the best interest of Bobby *requires.*" (Emphasis added.) This writer is persuaded that "necessary" and "required" are sufficiently synonymous to be equivalent. *See* Webster's Third New International Dictionary 1510–11, 1929 (1976). Therefore, what is required by the best interest of the child is no different than what is necessary to such best interest.

It must be noted, however, that, despite its reliance on waiver and estoppel theory, the trial court did make a determination that "it is not necessary that he [the child] be removed from either the Tieberg or the Ehlke home." Considering the findings made in accord with the sec. 767.24(2), Stats., factors already discussed, the writer would hold that the trial court's necessity determination is not warranted by the facts

as found. The trial court's statement on necessity, then, may and must be disregarded.

The court majority here rejects, as would the writer, the waiver/estoppel basis for decision in favor of holding that the change of custody statute, sec. 767.32(2), Stats., requiring proof that "removal is necessary to the child's best interest," applies only to a situation where change is sought from a parent or one who has both the rights and duties of custodianship as set forth in sec. 48.02(12), Stats. The writer concurs, finding the phrase "removal from the care" in the change of custody statute crucial. The statute applies only to a custody order which "removes a child *from the care* of a parent having custody." Sec. 767.32(2) (emphasis added). It is not appropriately applied in the case before us where the consequences of granting the mother's motion would keep the child *in the care* of the parent with whom he has resided for nearly three years after being placed there by the other parent. While the writer concurs in the result and resources of the court majority, this concurring opinion is written to submit that sec. 767.32(2) and the *Millikin* and *Gould* decisions not only support but require that this mother's motion for custody and child support assistance be granted. Two roads then can be followed but either one leads without detour to requiring affirmance of the trial court order granting the noncustodian mother's motion for change of custody and contribution by the father to the support of the child. So the writer would affirm.