Mark J. CARL, Sr., and Patricia J. Carl, Plaintiffs-Appellants,†

v.

SPICKLER ENTERPRISES, LTD., a domestic business corporation, Defendant-Respondent,

GULF STREAM COACH, INC., a foreign business corporation, Defendant-Third Party Plaintiff-Respondent-Cross Appellant,

v.

FORD MOTOR COMPANY, a foreign corporation, Third Party Defendant-Respondent-Cross Respondent.

Court of Appeals

*No. 91–0512. Submitted on briefs October 14, 1991.—Decided November 19, 1991.*

(Also reported in 478 N.W.2d 48.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *De Bardeleben & Associates* and *Daniel Snyder* of Park Falls.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Dennis M. Sullivan* of *Herrick, Hart, Duchemin, Danielson & Guettinger, S.C.* of Eau Claire.

On behalf of the defendant-third party plaintiff-respondent-cross appellant, the cause was submitted on the brief of *David A. Piehler* of *Terwilliger, Wakeen, Piehler & Conway, S.C.* of Wausau.

On behalf of the third party defendant-respondent-cross respondent, the cause was submitted on the briefs

of *Mary E. Bolkcom* and *Mary T. Novacheck* of Minneapolis, Minnesota.

Before Cane, P.J., Myse and Moser, JJ.

CANE, P.J. Mark and Patricia Carl appeal a summary judgment dismissing their lemon law claim and portions of their breach of express warranty claim against Spickler Enterprises, Ltd., and Gulf Stream Coach, Inc. They also appeal the trial court's refusal to allow them to amend their complaint, the directed verdict dismissing their breach of implied warranty claim and the denial of their motions after verdict to change the damage award and to allow attorney fees and costs pursuant to 15 U.S.C. § 2310 (1982).

Gulf cross-appeals alleging that if we conclude that the trial court erred by dismissing the Carls' breach of implied warranty claim, we must also conclude that the court erred by dismissing Gulf's third-party complaint against Ford Motor Company. We affirm and, therefore, do not address Gulf's cross-appeal.

On March 15, 1988, the Carls took possession of a motor home they purchased from Spickler, a motor home dealer. Gulf manufactured the motor home except for the chassis, which Ford manufactured. Within two days after taking possession, the Carls notified Spickler of several defects in the motor home, including cold air drafts coming through the fire wall. On April 5, 1988, the Carls returned the motor home to Spickler for repairs. The service order for the repair work performed on April 5 indicates that Spickler was notified of and attempted to repair the entry door lock, a rear marker light, the cabinet door above the stove, drawers, the television antenna, a crack in the dash and the cold air draft from below the dash and door. The Carls also allege that Spickler's manager accused them of abusing the motor

home over the last six months, although the Carls possessed the motor home less than one month.

In a letter sent to Gulf and Spickler dated April 11, 1988, the Carls listed various additional problems with their motor home and complained about the verbal accusations made by Spickler's manager. They also indicated that the chassis was recalled and that Spickler, refusing to do the recall work, sent them to various Ford dealers. The Carls notified Gulf and Spickler of more defects in their motor home in a letter dated April 18. In response, Gulf sent a letter to the Carls dated April 22, indicating that Spickler was willing to repair the claimed defects. However, the Carls did not return the motor home to Spickler for additional repair work. Instead, the Carls sued Gulf and Spickler under the lemon law, sec. 218.015, Stats., and for breach of express and implied warranty.

The breach of express warranty claim alleged various specific defects. The breach of implied warranty claim related to the defective chassis and the defective steering mechanism and fuel tank allegedly caused by the defective chassis. Gulf impleaded Ford because Ford manufactured the chassis. The Carls also claimed attorney fees and expenses under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 (1982).

On a motion for summary judgment, the trial court dismissed the Carls' lemon law claim and all allegations under their express breach of warranty claim, except those allegations concerning the defects Spickler attempted to repair on April 5.[1] The trial court denied the Carls' motion to amend their complaint to add the

_____

[1]The trial court's order indicates that it dismissed all allegations under the breach of express warranty claim, except those relating to the cold air drafts and cracked dash. However, its decision was based on the understanding that the cold air and

dismissed express warranty allegations to the implied warranty claim. Furthermore, on a motion for directed verdict, the trial court dismissed the Carls' implied warranty claim for lack of notice and dismissed Ford from the action.

The jury found Gulf and Spickler liable and awarded damages in the amount of $3,000. The trial court denied the Carls' motions after verdict to change the jury award to $44,050 and to allow attorney fees and expenses under the Magnuson-Moss Warranty Act.

## LEMON LAW

We first address whether the Carls' lemon law claim was properly dismissed on summary judgment. The methodology for reviewing a summary judgment has been set forth by this court many times, and it need not be repeated here. *See Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). Our review of a summary judgment is de novo. *Grosskopf Oil v. Winter,* 156 Wis. 2d 575, 581, 457 N.W.2d 514, 517 (Ct. App. 1990).

The trial court granted summary judgment dismissing the Carls' lemon law claim under sec. 218.015, Stats., holding that the Carls did not comply with the notice and opportunity to repair requirements of sec. 218.015(2)(a). The Carls claim that the trial court erred because there are disputed issues of material fact concerning notice, opportunity to repair and whether the vehicle was out of service for thirty days.

Section 218.015(2)(a), Stats., states:

cracked dash problems were not repaired, but the other five defects were repaired to the Carls' satisfaction.

> If a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity to . . . any of the manufacturer's authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner, the nonconformity shall be repaired.

Section 218.015 also provides that if after a reasonable attempt to repair the nonconformity is not repaired, the consumer may be entitled to a refund. A "reasonable attempt to repair" is defined as

> any of the following occurring within the term of an express warranty applicable to a new motor vehicle or within one year after first delivery of the motor vehicle to a consumer, whichever is sooner:
> 1. The same nonconformity with the warranty is subject to repair by the . . . manufacturer's authorized motor vehicle dealers at least 4 times and the nonconformity continues.
> 2. The motor vehicle is out of service for an aggregate of at least 30 days because of warranty nonconformities.

Section 218.015(1)(h), Stats. In *Vultaggio v. General Motors Corp.,* 145 Wis. 2d 874, 887, 429 N.W.2d 93, 97 (Ct. App. 1988), we held that once there is notice and opportunity to repair, the thirty-day clock starts running. Additionally, the notice must be sufficient to enable the dealer to attempt to repair the nonconformity the owner is alleging. *See id.* at 886–87, 429 N.W.2d at 97.

The Carls do not claim that they provided a "reasonable attempt to repair" by bringing their motor home in for repair at least four times. However, they do contend that they meet the requirements of the lemon law

because their motor home was out of service at least thirty days due to warranty nonconformities. The Carls argue that when they gave notice of the defects on March 17 or 18, the thirty-day clock started to run. They also argue that because they provided an opportunity to repair on April 5, they met the notice and opportunity requirements of sec. 218.015, Stats. Consequently, the Carls claim that their refusal to return their motor home for repairs after Gulf's April 22 letter is irrelevant because that letter came after the expiration of the thirty-day period. We disagree.

The thirty-day clock began to run on April 5 because that is the earliest date the Carls gave Spickler both notice and an opportunity to repair. We reach this conclusion because the undisputed facts in this case provide no evidence that the Carls gave opportunity before April 5. They do not argue that Spickler delayed in attempting to repair the motor home before April 5. To conclude, as the Carls suggest, that the thirty-day clock begins to run with only notice ignores the holding in *Vultaggio,* requiring both notice and opportunity. *Id.* at 887, 429 N.W.2d at 97. However, although we conclude that opportunity was first provided when the Carls took their motor home in for repair in this case, we caution that this holding does not stand for the proposition that "opportunity to repair" is synonymous with the owner taking the vehicle in for repair on the date set by the dealer.

If the Carls continued to make their motor home available for repair within the thirty days following April 5 and the unit was "not capable of rendering service as warranted due to a warranty nonconformity," *id.* at 886, 429 N.W.2d at 97, they may have had a lemon law claim.

However, the Carls refused to return their motor home to Spickler or any other authorized dealer for repair work after they received the April 22 letter from Gulf indicating that Spickler would repair the defects. This occurred within thirty days from April 5. Thus, we conclude that the Carls did not make their motor home available for repairs throughout the thirty-day period.

We reject the argument that if one gives notice and a single opportunity to repair, one can refuse additional attempts to repair the vehicle within thirty days and thereafter sue under the lemon law. We also hold that the accusations made by Spickler's manager do not excuse the Carls from providing opportunity to repair. Therefore, the trial court properly dismissed the Carls' lemon law claim. Because we conclude that the Carls did not satisfy the thirty-day requirement, we need not address whether the alleged nonconformities were sufficient to render the motor home "out of service" under sec. 218.015, Stats.

## BREACH OF EXPRESS WARRANTY

The Carls also claim that the court erred by dismissing the portion of their breach of warranty action regarding those alleged defects that were not taken to Spickler for repair. We disagree.

Section 402.607, Stats., provides in part that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of [the] breach or be barred from any remedy." The express warranty covering the Carls' motor home also requires the owner to contact the dealer about any problems the owner believes are covered by the warranty. Additionally, the warranty provides that "[t]he owner, at his

expense, will deliver the recreation vehicle to the dealer or authorized repair location for warranty service."

Here, the Carls delivered the motor home for repairs only on April 5 and then only for the repair of specific defects. They never delivered the motor home for repair of the additional claimed defects made known to Spickler after April 5. The Carls cannot claim a breach of express warranty regarding the defects that Spickler had no opportunity to repair. Consequently, we conclude that under the terms of the express warranty, the trial court properly granted summary judgment dismissing all allegations under the Carls' breach of express warranty claim, except those allegations concerning the defects Spickler attempted to repair on April 5. The Carls argue that their notice was sufficient or, alternatively, that there is a material issue of fact for the jury as to the sufficiency of their notice. However, because the Carls did not provide Spickler an opportunity to repair the additional defects, we need not address whether notice was sufficient.

## AMENDMENT OF THE COMPLAINT

We next address whether the trial court abused its discretion by denying the Carls' motion to amend their complaint to add the dismissed express warranty defects to their implied warranty claim. The decision to grant leave to amend a complaint is within the trial court's discretion. *Korkow v. General Cas. Co.,* 117 Wis. 2d 187, 197, 344 N.W.2d 108, 113 (1984). We will not reverse a discretionary decision unless there is an abuse of discretion. *Oostburg State Bank v. United S&L Ass'n,* 130 Wis. 2d 4, 11, 386 N.W.2d 53, 57 (1985). An abuse of discretion occurs if the record shows that the trial court

did not exercise its discretion, the facts do not support the trial court's decision or the trial court applied the wrong legal standard. *Id.* at 11–12, 386 N.W.2d at 57.

Section 802.09(1), Stats., states in part: "A party may amend the party's pleading once as a matter of course at any time within 6 months after the summons and complaint are filed . . .. Otherwise a party may amend the pleading *only by leave of court* . . .." (Emphasis added.) Under sec. 802.09(1), the trial court has discretion to grant leave to amend the complaint at any stage of an action if justice so requires. *Korkow,* 117 Wis. 2d at 197, 344 N.W.2d at 113. Whether "justice so requires" depends upon "whether the party opposing amendment has been given such notice of the operative facts which form the basis for the claim as to enable him to prepare a defense or response." *Id.*

The Carls filed their motion to amend the complaint eight days before trial. In its decision denying the Carls' motion to amend, the trial court stated that if it granted the motion to amend, it would have to also grant a continuance to give the defense time for additional discovery concerning the defects under the implied warranty claim so they would not be prejudiced. However, because of the timing of the motion, the trial court concluded that it was not fair to the court and to the defense to grant a continuance because the case had already been pending for a substantial time. We conclude that this decision was a proper exercise of the trial court's discretion.

Next, the Carls argue that the trial court erred by dismissing their breach of implied warranty claim. The standard for reviewing whether a trial court erred by directing a verdict is whether, when viewing the evidence most favorably to the party against whom the verdict is sought to be directed, there is any evidence to support a contrary verdict or sustain a cause of action. *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Constr.,* 96 Wis. 2d 314, 338, 291 N.W.2d 825, 837 (1980).

The Carls' breach of implied warranty claim related to a defective steering mechanism and fuel tank, allegedly caused by the defective chassis. The trial court dismissed this claim for lack of notice.

In *Paulson v. Olson Implement,* 107 Wis. 2d 510, 319 N.W.2d 855 (1982), the supreme court considered what constitutes sufficient notice under sec. 402.607, Stats., requiring a buyer to give notice of breach to a seller. The supreme court held that the purchasers provided the requisite notice under sec. 402.607 when they provided notice that enabled the seller "to make adjustments or replacements or to suggest opportunities for cure." *Paulson,* 107 Wis. 2d at 525–26, 319 N.W.2d at 862. Thus, *Paulson* requires that notice be sufficient to enable the seller to attempt to repair the defect. *Id.* Furthermore, the buyer must provide this notice before commencing an action. *See id.* at 526, 319 N.W.2d at 862; *Marsh Wood Products v. Babcock & Wilcox,* 207 Wis. 209, 225, 240 N.W. 392, 399 (1932).

In this case, the undisputed facts indicate that the Carls gave notice to Spickler and Gulf of the fact that

their motor home chassis had been recalled by Ford.[2] In response to the letter, Gulf told the Carls that Spickler would inform them where to take their motor home to have the recall work performed. The Carls never mentioned having problems with the steering mechanism or fuel tank prior to commencing the lawsuit.

Viewing the facts most favorably to the Carls, this notice was insufficient to alert Spickler about the allegedly defective steering mechanism and fuel tank so that it could attempt to repair them. Thus, the trial court properly dismissed the claim. Because we affirm the trial court on this issue, we need not address Gulf's cross-appeal claim against Ford.

## DAMAGES

The Carls allege that the trial court erred by refusing to change the jury's damage award to $44,050. If there is "any credible evidence which under any reasonable view supports the jury finding especially when the verdict has the approval of the trial court, it should not be disturbed." *Ostreng v. Lowrey,* 37 Wis. 2d 556, 560, 155 N.W.2d 558, 559 (1968) (quoting *Springen v. Ager Plumb. & Htg.,* 19 Wis. 2d 487, 489, 120 N.W.2d 692, 693 (1963)). The amount of damages awarded is largely within the discretion of the jury. *Id.*

The measure of damages for breach of warranty is the difference between the fair market value of the goods as accepted and the fair market value of the goods as warranted. Section 402.714, Stats. According to the Carls' expert witness, the motor home had no value with

---

[2]Because the Carls did not sue Ford, we are concerned with the notice given only to Spickler and Gulf.

the defects. Thus, the Carls claim that the difference in fair market value of their motor home as accepted and as warranted is equal to the $44,050 purchase price. Gulf and Spickler's expert testified that it would cost $386 to repair the defects. The jury awarded $3,000 damages to the Carls.

Because a jury is free to disregard an expert's uncontroverted opinion, *Capitol Sand & Gravel Co. v. Waffenschmidt,* 71 Wis. 2d 227, 234, 237 N.W.2d 745, 749 (1976), the Carls' argument that the jury must award $44,050 in damages because their expert's opinion is the only evidence of the difference in fair market value must fail. Additionally, because a jury is given broad discretion in awarding damages and that award is to be upheld if it is within reasonable limits, *see Cords v. Anderson,* 80 Wis. 2d 525, 552–54, 259 N.W.2d 672, 685–86 (1977), we conclude that the evidence supports the jury's damage award of $3,000.

## ATTORNEY FEES AND COSTS

Last, the Carls contend that the trial court erred by denying their motion for attorney fees and expenses under 15 U.S.C. § 2310(d)(2) (1982). That subsection provides in part:

> If a consumer finally prevails in any action brought under . . . this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred . . . unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

Under § 2310(d)(2), the trial court has the discretion to allow costs and attorney fees. *See Hanks v. Pandolfo,* 450 A.2d 1167, 1169-70 (Conn. Super. Ct. 1982). Because the Act calls for application of state law except where it prescribes a regulating rule, *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1012 (D.C. Cir. 1986), we apply Wisconsin law to determine whether the trial court abused its discretion. We will not reverse a discretionary decision unless there is an abuse of discretion. *Oostburg State Bank,* 130 Wis.2d at 11, 386 N.W.2d at 57. There is an abuse of discretion if the record shows that the trial court did not exercise its discretion, the facts do not support the trial court's decision or the trial court applied the wrong legal standard. *Id.* at 11-12, 386 N.W.2d at 57.

In its decision denying attorney fees and costs to the Carls, the trial court indicated that because most of the Carls' claims were dismissed, it could not justify making Gulf and Spickler pay substantial attorney fees for a few small defects. Thus, the trial court concluded that an award of attorney fees in the amount of some $40,000 was inappropriate in light of the few claims on which the Carls prevailed. The fact that the Carls recovered $3,000 authorizes the trial court to allow recovery of such attorney fees, but does not require the trial court to grant them. The trial court is free to exercise its discretion, and we cannot say that it improperly exercised its discretion on the basis of the facts in this case and the applicable law.

*By the Court.*—Judgment and orders affirmed.