ANNETTE KINGSLAND ZIEGLER, J.
¶ 76. (dissenting). I respectfully dissent from the majority opinion, which concludes that the circuit court must hold an entirely new jury trial on all of the issues in this case when it is Mable K. who is solely responsible for her own egregious and volitional failure to appear in court. Because of the majority's conclusion, a circuit court's authority to enforce its orders is diminished, a non-appearing party's behavior is rewarded, and at least two children's lives continue to hang in the balance. Our system of justice is designed to do better.
¶ 77. Mable K. chose not to come to court on the second day of a fact-finding hearing in front of a jury. She knew when she was to appear, but she chose not to follow the circuit court's order. Accordingly, I conclude that the trial court did not erroneously exercise its discretion when it vacated the default judgment and instead, sanctioned Mable K. for her egregious behavior by ordering that the remainder of the evidence would be heard as a court trial. The circuit court was not unreasonable in concluding that Mable K. relinquished the right to a jury trial when she chose not to appear before the jury that had been impanelled.
¶ 78. Curiously, the majority opinion rests its conclusions on the hypothetical scenario of default judgment remaining in place against Mable K. However, the default judgment was vacated. It is not before this court. Nonetheless, the majority opinion concludes that *428 because default judgment once was granted, the rules of State v. Shirley E., 2006 WI 129, 298 Wis. 2d 1, 724 N.W.2d 623, and Evelyn C.R. v. Tykila S., 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768, have been irreparably violated. The majority opinion errs: first, by ducking the issue this case actually presents, i.e., whether the circuit court erroneously exercised its discretion by sanctioning Mable K.'s egregious conduct by ordering that the trial be continued as a bench trial; and second, by misapplying the opinions it cites, given the facts of this case.
¶ 79. In short, the majority opinion is based on a factual fiction that leaves a circuit court no ability to sanction a party who egregiously disobeys a court order to appear for the second day of a jury trial at which grounds for termination are being adjudicated. Instead, the majority rewards such a party. The majority's analysis leaves the tail wagging the dog.
¶ 80. I conclude that the circuit court reasonably exercised its discretion when it vacated the default judgment and sanctioned Mable K. for her egregious conduct by reconvening the termination of parental rights (TPR) proceeding as a trial to the court, rather than selecting a second jury to replace the jury that would have heard the termination proceeding if Mable K. had appeared.
¶ 81. I also conclude that under Evelyn C.R., when a default judgment is reviewed, we are to determine whether the circuit court heard sufficient evidence on the grounds in the petitions before it granted default. Unlike Evelyn C.R., Dane County had presented nearly all of the evidence in its case-in-chief before the court sanctioned Mable K. by granting a default judgment due to her failure to appear before the jury. I further conclude that under Shirley E., Mable *429 K.'s right to counsel was not violated because her attorney substantively participated in the proceedings.
¶ 82. There are and should be consequences for a party who, without excuse, fails to appear for trial. Mable K. deserves a fair trial, but these children deserve stability and security. Isaiah H. and May K. remain innocent victims who now must wait even longer for a conclusion in this matter. Instead of considering that this case also involves two young children, the majority accepts review of a non-final order and sends this case back for the selection of a second jury to hear the TPR proceeding. In so doing, the majority sends a message to parties who do not like the way a trial is going: do not show up for the second part of the trial. You get a "do over." The manner in which the majority reaches this determination is unprecedented and, for these reasons, I respectfully dissent.
I. THERE IS NO DEFAULT JUDGMENT TO REVIEW
¶ 83. Procedurally, Mable K.'s appeal is an attack on a non-final order, and we should not have accepted review. The majority opinion grants an entirely new jury trial when there has been no final order in the case below.
¶ 84. The sanction currently before the court is the continuation of the fact finding as a bench trial. This sanction arose out of a fact-finding hearing that commenced on September 13, 2010. Mable K. appeared for the first day of the hearing.[1] However, she chose not to appear at the time set for the second day of the hearing, despite being court ordered to do so and being *430 verbally reminded when to appear. Because of her choice, the circuit court initially entered default judgment against Mable K., finding that there were grounds to terminate her parental rights. The circuit court then scheduled a dispositional hearing for January 3, 2011. At the dispositional hearing, the circuit court terminated the parental rights of Mable K., Wesley J., and Lee H.
¶ 85. After the dispositional hearing on January 3, 2011, Lee H. and Mable K. both appealed; Wesley J. did not. The court of appeals issued a decision upholding the termination of parental rights for Lee H. The court of appeals remanded the case to the circuit court to determine whether the circuit court had erroneously entered default judgment against Mable K.
¶ 86. On remand, the circuit court (1) vacated the orders terminating her parental rights,[2] and (2) returned Mable K. back to the fact-finding hearing, before default was granted. Mable K. is currently in a position to have counsel represent her and present evidence, testimony, and witnesses. No final fact finding has been completed, and no final order or judgment exists because the circuit court vacated the default judgment.
¶ 87. Appeals in TPR cases, under Wis. Stat. § 809.107, can be taken from "an order or judgment" under Wis. Stat. § 48.43. Because there was no final order in place, the court of appeals concluded that neither party could appeal as a matter of right, and it was not "inclined to grant leave" to appeal. Cf. Wis. Stat. *431 § 808.03(1); Wick v. Mueller, 105 Wis. 2d 191, 195-98, 313 N.W.2d 799 (1982) (concluding that an order for a new trial in a civil case is not appealable as a matter of right because it does not dispose of the entire matter).
¶ 88. It is quite unusual, if not unprecedented, for this court to take such an appeal in a TPR case, where there is no order or judgment to review. Nonetheless, despite there being no final order in place, the majority determines that Mable K. is entitled to the extraordinary relief of a second jury to replace the previous jury that Mable K. chose not to appear before beyond the first day of testimony. Curiously, the majority concludes that the circuit court "erroneously exercised its discretion when it entered a default judgment" because the default "depriv[ed] her of her statutory right to an attorney," and because the default was granted before Dane County "establish[ed] the grounds alleged in the amended petitions." See majority op., ¶¶ 51, 57.
¶ 89. By repeatedly discussing a default judgment that does not exist, the majority opinion ducks the actual issue this case presents, i.e., whether the circuit court erroneously exercised its discretion in sanctioning Mable K.'s egregious conduct by ordering that the trial will be continued as a bench trial.
II. FAMILY BACKGROUND
¶ 90. Notably absent from the majority opinion is any meaningful discussion of the court record concerning the family background, repeated attempts to reunite the children with their mother, and failure of Mable K. to actively engage in the children's upbringing. The majority opinion leaves Isaiah H. and May K. to continue hanging in the balance, neglecting appropriate consideration of the children's interests, and *432 instead, affords considerable accommodation to a parent who has not engaged in her children's lives for years and who, without any reasonable excuse, did not timely attend the second day of the jury trial at which grounds to terminate her parental rights were being adjudicated. According to the record before this court, the lives of these children have hung in the balance for far too long.
¶ 91. The majority opinion almost portrays Mable K. to be an innocent victim of circumstance. A review of the record reflects that she has had opportunity after opportunity to parent these children. The record reflects that in January 2007, both of Mable K.'s sons, Samuel C.,[3] age three, and Isaiah H., age ñve and one-half at the time, were determined to need care that no one could provide.[4] The government placed both boys in out-of-home care. May K., Mable K.'s third child, was placed at her current foster home shortly after May K. was born in November 2008, because Mable K. was allegedly not able to meet her daughter's needs consistently or keep her safe. At the hospital, staff members raised concerns about Mable K.'s ability to care for a newborn.[5] The social worker opined that Mable K. would not be able to meet the demands of a *433 newborn baby. May K., now over four years old, has lived outside of her parental home consistently since she was born.
¶ 92. All of the biological parents in this case have significant criminal histories, which, in and of itself, is not grounds for termination. However, the current record is replete with allegations of their impaired ability to be available for their children, and to provide for the children's basic needs, stable housing, medical needs, and personal needs. Lee H., the adjudicated father of Isaiah H., was incarcerated at the time Isaiah H. was placed in foster care, and he was again incarcerated in January 2010. He has six criminal convictions. Mable K. has at least two previous convictions for forgery, and was on probation at the time her sons were placed in foster care. Initially, Mable K. did not disclose the name of May K.'s father, Wesley J, purportedly because she was concerned that Dane County would judge him by his previous criminal record. Wesley J. was convicted of second-degree sexual assault of a child and several other violent crimes.[6]
¶ 93. The record before us reflects that Mable K. and her family have had many contacts with the Dane County Department of Human Services (Dane County) and have been the subject of approximately 16 referrals to Dane County. In short, the referrals alleged that the children were in need of protection or services, that they had unaddressed health problems, and that they were neglected.
¶ 94. As part of the services provided by Dane County, Mable K. completed a psychological evaluation *434 in 2007, and Dane County attempted to provide her with mental health treatment. Mable K. remains the only biological parent available to take care of the two children at issue, as the parental rights of both biological fathers have been terminated. The record indicates that on numerous occasions, Mable K. would fail to show up for a confirmed family contact or would simply cancel the family contact. According to the court record, before the start of this case on March 24, 2010, Mable K.'s last contact with her children was on December 17, 2009. Following that date, she purportedly missed three weekly, scheduled family contacts despite being told that she needed to have a meeting to discuss the missed family contacts. Nonetheless, the record indicates that she failed to request or arrange such a meeting, and her excuse for not making the scheduled contacts was that she had many appointments and that it was none of Dane County's business what she was doing. At best, Mable K. has had sporadic contact with her children.
¶ 95. According to Dane County, Mable K. did not make consistent progress in meeting the specified court ordered conditions for the return of her children. She did not make appropriate planning for the children or work closely towards permanent placement with the assigned Dane County social worker or social service specialist. The reunification team was involved with Mable K. and her children from mid-January 2009, until April 23, 2009, at which time it was clear that Mable K. was not ready for the children's transition to her full-time care. Mable K. was unable to consistently and appropriately address the children's emotional needs and challenging behavior. During her time with her children, Mable K. appeared to be more focused on meeting her own personal needs rather than those of her children. Dane County explained that it attempted *435 to avoid terminating Mable K.'s parental rights. She was provided with the opportunity to utilize a variety of resources, attend meetings, participate in evaluations, attend court hearings, and work with specialists to improve her parenting skills. Nonetheless, the record reflects that Dane County filed two TPR petitions on March 24, 2010, which alleged that both Isaiah H. and May K. were children in need of protection or services (CHIPS). An amended petition was filed on June 1, 2010, which also alleged that both children had been abandoned.
¶ 96. Despite her repeated contact with the system and the gravitas of the subject matter, on the second day of the jury trial, Mable K. found it more important to "get me some breakfast" because she was "real kind of sick" from the proceedings and she "was just tired."
III. THE CIRCUIT COURT DID NOT ERR
A. The Conduct Was Egregious
¶ 97. The circuit court did not erroneously exercise its discretion in concluding that Mable K. demonstrated egregious conduct by failing to appear at the second day of the fact-finding hearing. A sanction was warranted.
¶ 98. Notwithstanding that there is no default judgment to review in this case, the majority relies on Evelyn C.R. to support its conclusion that the default judgment was an improper remedy. However, unlike the majority, I undertake an analysis of whether a sanction was justified by Mable K.'s failure to appear, and then I determine whether the circuit court erroneously exercised its discretion when it sanctioned Mable K. by *436 continuing the TPR proceeding as a bench trial rather than impanelling a second jury. This analysis leads me to conclude that Mable K.'s conduct was egregious and that the circuit court did not erroneously exercise its discretion in sanctioning Mable K. by reconvening the TPR proceeding as a trial to the court, rather than selecting a new jury to replace the jury that would have heard the termination proceeding if Mable K. had timely appeared.
¶ 99. A circuit court has inherent and statutory power to sanction parties who fail to obey court orders. Evelyn C.R., 246 Wis. 2d 1, ¶ 17. Under this authority, a circuit court may sanction a party who fails to comply with a court order.[7] Id. The decision to sanction a party is within the sound discretion of the circuit court. Id., ¶ 18; Oostburg State Bank v. United Sav. & Loan Ass'n, 130 Wis. 2d 4, 11, 386 N.W.2d 53 (1986). An appellate court reviews a circuit court's discretionary determination for an erroneous exercise of discretion. Evelyn C.R., 246 Wis. 2d 1, ¶ 18. A reviewing court will affirm the circuit court's exercise of discretion if the circuit court has examined the relevant facts, has applied a proper standard of law, and has used a demonstrated, rational process to reach a conclusion that a reasonable *437 judge could reach. Loy v. Bunderson, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).
¶ 100. Before a circuit court may sanction a party who failed to comply with a court order, the party's conduct must be egregious or in bad faith. Shirley E., 298 Wis. 2d 1, ¶ 13 n.3. Failure to comply with a circuit court scheduling order without a clear and justifiable excuse is egregious conduct. Indus. Roofing Servs., Inc. v. Marquardt, 2007 WI 19, ¶ 43, 299 Wis. 2d 81, 726 N.W.2d 898. "Egregious" conduct has been defined as "extreme, substantial, and persistent." Id. While the record on appeal must reflect the circuit court's reasoned application of the appropriate legal standard to the relevant facts, an appellate court need not remand for such a determination if the circuit court's finding was implicit. Englewood Cmty. Apartments Ltd. P'ship v. Alexander Grant & Co., 119 Wis. 2d 34, 39 n.3, 349 N.W.2d 716 (Ct. App. 1984) ("[A] remand directing the trial court to make an explicit finding where it has already made unmistakable but implicit findings to the same effect would be both superfluous and a waste of judicial resources.").
¶ 101. After Dane County filed the petition to terminate her parental rights, Mable K. was ordered to appear personally at all proceedings in this case by a court order dated May 24, 2010. Nearly six months later, a fact-finding hearing before a jury commenced on September 13, 2010. Mable K. appeared for the first day of the jury trial, but chose not to appear for the second day of trial at the time when she was instructed to appear.
¶ 102. Mable K. is not an innocent victim of circumstance who was unfairly sanctioned. The circuit court entered an order requiring that Mable K. personally appear at all hearings. The circuit court took extra *438 effort to remind her at the conclusion of the first day of trial to be in court the next day before 9 a.m. Mable K. ignored the circuit court's directive and did not come to court at 9 a.m. to defend herself in a matter where her children could be taken away forever.
¶ 103. The circuit court and counsel undertook efforts to get her to court. She did not come to court when she was instructed to be there or even when she said that she would be there. When she did not show, the circuit court, the jury, and counsel waited for her.
¶ 104. Specifically, her attorney (Attorney Lehner), who had talked with Mable K. earlier that morning, later called her to persuade her to come to court. Mable K. told Attorney Lehner that she would ride her bike to court and be there within a half-hour, by 9:45 a.m. By 10:35 a.m., she still had not arrived. At that point, the circuit court concluded that a sanction was warranted, and it found Mable K. in default on both of the allegations, CHIPS and abandonment.[8]
*439 ¶ 105. At approximately 10:45 a.m., nearly two hours late, Mable K. finally arrived and counsel moved for relief from the default judgment. The circuit court allowed Mable K. to testify about why she did not appear, and she stated that she was "real kind of sick" from the proceedings, she "was just tired," and she wanted to "get me some breakfast." She acknowledged that Attorney Lehner warned her of the consequences of failing to appear. Mable K. said that she did not sleep well and had just woken up around 9 a.m. She testified that she knew she needed to be at the court by 9 a.m.
¶ 106. In its initial decision, the circuit court did not explicitly use the word "egregious," but a review of the record makes clear that the court did find her conduct to be egregious. Our court does not require a circuit court to use "magic words" when undertaking a legal analysis and in making findings. Englewood, 119 *440 Wis. 2d at 39 n.3. Furthermore, the court did find that Mable K. was not credible. The court considered her excuses but also noted that Mable K. previously arrived three hours late in the TPR proceeding for her son Samuel C. Indeed, at a hearing on August 26, 2011, the circuit court judge stated:
It was and, frankly, still is evident to this Court on this record in this Court's view that it is an egregious violation of the Court order given the fact that it was orally issued to Ms. K, it was given to her in written form, she is in a jury trial,.. . the fact that she was reminded when the Court concluded its proceedings the first day of trial on the 13th that she needed to be here a little bit before 9:00, this is egregious to the Court and it is without justifiable basis. It's either egregious or in bad faith .. . but definitely I don't think you even need to use those magic words for those things to in fact he true.
¶ 107. I agree with the circuit court that Mable K.'s conduct was deserving of a sanction. Although the court did not use the word "egregious" initially, the record reflects that the court found her conduct to be egregious. The circuit court did not erroneously exercise its discretion when it sanctioned Mable K. for her failure to appear.
¶ 108. The record reflects that the circuit court made several findings to support the sanction for her egregious behavior. The court cited to the following facts: that the order dated May 24, 2010, required Mable K. to appear personally at all hearings; that at the end of the first day of the fact-finding hearing, the court informed all parties that they needed to be in court shortly before 9 a.m. on the next day; that she had shown up late to a previous TPR proceeding; and that the court did not find her explanation about why she *441 could not have followed the court order credible. In short, Mable K. failed to demonstrate any credible reason for her failure to appear at the time set by the court.
¶ 109. I conclude that Mable K.'s actions were especially egregious in the context of a TPR trial.[9] It took nearly six months from the time the TPR petition was filed until the time of the trial. The circuit court held eight hearings before the first day of trial, including several hearings based on the petitions, two pretrial conferences, and two motion hearings. The circuit court and the parties all completed substantial pretrial work, much of which is now rendered void by the majority opinion. In addition to the large amount of pretrial work, there was a full day of the fact-finding hearing before Mable K. failed to follow the court's order.[10]
¶ 110. Mable K. was the witness her attorney would have called, but her failure to appear precluded her attorney from presenting her testimony in an attempt to rebut evidence presented in support of the petitions to terminate her parental rights.[11] The court *442 and the jury were not required to wait until Mable K. chose to arrive. Mable K.'s conduct was egregious, and a sanction was appropriate. If Mable K. valued a jury trial, she should have appeared for the second day of the trial. That the court chose not to put Dane County to the expense of impanelling a second jury, and instead chose to conclude the fact-finding hearing as a bench trial, is within the circuit court's discretion.
B. Majority Opinion Errs In Its Analysis Of Evelyn C.R.
¶ 111. The majority claims to rely on Evelyn C.R. to support its determination that a second jury must be impanelled and the trial to begin anew. In my view, because the circuit court had a significant evidentiary record before it, the court did not violate the rule of Evelyn C.R.
¶ 112. In Evelyn C.R., we held that "the circuit court had the duty at the fact-finding hearing to find by clear and convincing evidence that all of the elements" of the allegations in the petition are met. 246 Wis. 2d 1, ¶ 24. In Evelyn C.R., the court did not hold a fact-finding hearing. Id., ¶ 9. Instead, the court granted default against the mother, Tykila S., for failure to appear personally, finding her unfit based solely upon allegations in the petition. Id. In Evelyn C.R., the circuit court "had no evidentiary basis to support its finding of abandonment." Id., ¶ 24.
*443 ¶ 113. By contrast, in Mable K.'s case, the circuit court heard evidence supporting the CHIPS and abandonment claims before it decided to sanction Mable K. Dane County had presented evidence at trial, which was tested by Attorney Lehner's cross-examination. The circuit court made explicit findings that Mable K. was unfit on both grounds. If no further testimony was taken, it is because Mable K. did not come to court to be her own witness. The procedural posture of Evelyn C.R. is clearly distinguishable from the posture of this case at the time that Mable K. was sanctioned by the circuit court.
¶ 114. For example, unlike Evelyn C.R., the circuit court heard substantial testimony against Mable K., nearly all of Dane County's case-in-chief.[12] On the first day of the fact-finding hearing, before default was an issue, the circuit court heard testimony from Brenda Blank (Blank), Mable K.'s case worker. First, during *444 Blank's testimony, Dane County introduced orders adjudging both Isaiah H. and May K. as children in need of protection or services and placing them outside of Mable K.'s home. The orders, which were entered as exhibits, contained the notice required by Wis. Stat. § 48.356(2). Second, Blank testified that Dane County "definitely did" make a reasonable effort to provide the services ordered by the court. For example, Mable K. received one-on-one parent education and support, was assigned a social service specialist, worked with a family reunification team, and worked with Blank on specific tasks she could complete to meet the conditions of return. Third, Blank testified that both children had spent more than six months outside of Mable K.'s home. May K. has been continuously outside of the home since she was born, in November of 2008. Isaiah H. has been continuously outside of the home since 2007. Finally, Blank testified that Mable K. "will absolutely not" meet the conditions for return within nine months of the fact-finding hearing. Blank testified that Mable K. failed to meet a majority of the conditions of return, including maintaining housing, showing interest in the children, maintaining regular visits without canceling, showing that she could properly care for the children, and staying in touch and cooperating with the social worker. Mable K.'s counsel cross-examined Blank.
¶ 115. The circuit court also heard evidence of the grounds of abandonment[13] before it decided to sanction *445 Mable K. The CHIPS orders introduced during Blank's testimony satisfy the first element of abandonment. Further, it is notable that after Dane County moved for a default against Mable K., the court stated, "I need to have Mr. Boehm on the stand ... to make the findings related to default on Ms. K. on the abandonment ground." Dane County then called Michael Boehm to testify on the abandonment ground. Boehm testified that Mable K. had failed to communicate with her children for more than three months before the petitions to terminate her parental rights were filed, which satisfies the second element of abandonment. Boehm was also subject to cross-examination by Mable K.’s counsel.
¶ 116. Unlike Evelyn C.R., wherein the court heard no evidence, the circuit court here heard nearly all of Dane County's evidence — evidence that was subject to cross-examination — on both grounds before it found Mable K. unfit and sanctioned her. Indeed, "[i]f grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit." Wis. Stat. § 48.424(4) (emphasis added).
¶ 117. The majority opinion unnecessarily extends the rule in Evelyn C.R. such that it undermines the role of a circuit court in TPR proceedings. The majority opinion does not evaluate the evidence, does not give proper deference to the circuit court's exercise of its discretion, and ultimately does not evaluate whether grounds were established.
¶ 118. According to the record, Mable K., the absent parent, had the opportunity to present testimony to rebut the evidence that was presented on the grounds alleged as the basis for finding her unfit. She chose not to come to court where a jury had been *446 impanelled, and it is not her attorney's fault that no other witnesses testified that day.
¶ 119. The majority opinion unnecessarily undercuts a circuit court's authority to sanction a non-appearing parent by trying the case to the court rather than impanelling a second jury. The majority opinion does so because it never analyzes whether the sanction the circuit court chose was within its discretion. Cf. Shirley E., 298 Wis. 2d 1, ¶ 70 (Prosser, J., concurring) ("[Tjhis court's decision to protect a parent who did not care enough to appear and defend herself, seriously undercuts the authority of circuit judges to enforce their orders."). Instead, the majority opinion pretends that the default judgment that has been vacated still exists.
¶ 120. Not only is giving Mable K. a second jury trial unjustified, but it fails to consider the children's interests. The negative impact the majority opinion has on May K. and Isaiah H. adds insult to injury. After all, these children have not lived with their biological mother for years. This petition was filed nearly three years ago, on March 24, 2010, and was filed based on allegations that these children are in need of protection or services and that they have been abandoned by Mable K. and the biological fathers. The children must now wait even longer to resolve their family status. It is not Mable K. who was treated unfairly in these proceedings, it is her children.
C. Majority Opinion Errs In Its Analysis Of Shirley E.
¶ 121. The majority opinion also concludes that Mable K. was deprived on her statutory right to counsel under the rule of Shirley E. See majority op., ¶ 51. However, unlike Shirley E., Mable K. had a lawyer and *447 still has a lawyer. It is clear from the record that counsel was a zealous advocate for Mable K. throughout the pretrial proceedings and at trial. Counsel vigorously advocated for Mable K. even after she did not appear. Even now, Mable K. and her lawyer can mount a defense at the unfinished trial. Because the circuit court vacated the default judgment, the case awaits conclusion at the continued trial.
¶ 122. The majority relies on Shirley E. to conclude that Mable K. was wrongfully deprived of counsel and a second jury trial is required. Notably, however, the procedural posture in Shirley E. and the procedural posture of the case today are quite different. In Shirley E., the court granted a default against Shirley E. because she violated a court order personally to appear. 298 Wis. 2d 1, ¶ 13. However, unlike counsel for Mable K., counsel for Shirley E. was not allowed to participate in any way at the hearings. Id., ¶ 18. This court held that the circuit court violated Shirley E.'s statutory right to counsel because it granted a default judgment against her and also dismissed Shirley E.'s counsel from the fact-finding and dispositional hearing before any evidence was taken. Id., ¶ 56. Without counsel or Shirley E. present, the court found that Shirley E. was unfit, and it terminated her parental rights.
¶ 123. Simply stated, Shirley E. involved a total denial of counsel at the fact-finding and dispositional phases, which is not even remotely similar to the facts presented in this case. To be clear, Mable K. chose not to follow the court's order that she appear by 9 a.m. Instead, she slept late, stayed home, and ate breakfast, all the time knowing that she was required to be in court for the continuation of her trial where she was to be her own witness. Mable K. should be required to live with the consequences of the choices she made that *448 morning. Mable K. absented herself from the trial, and because counsel had no other scheduled witnesses until the third day of trial, anticipating that Mable K.'s testimony would fill the second day of trial, Mable K. created the problem of counsel having no one to call on the second day of trial. See supra note 11.
¶ 124. Moreover, unlike Shirley E., Mable K.'s attorney did participate substantively in pretrial matters and at the hearings. On the first day of the fact-finding hearing, counsel gave an opening statement that summarized why Mable K. should not be found unfit. Also on the first day of the hearing, Dane County presented testimony of Brenda Blank, one of Mable K.'s case workers. During that testimony, Attorney Lehner objected to hearsay at least five times and her objections were sustained several times. On the second day of the hearing, even though Mable K. was not present, the trial continued. Attorney Lehner cross-examined Blank, who testified regarding the CHIPS claim. Later in the hearing, Attorney Lehner cross-examined Dane County's witness Michael Boehm, a social service specialist, who testified regarding the abandonment claim.
¶ 125. After Mable K. arrived, the circuit court allowed her to testify as to why she was late, and Attorney Lehner argued on Mable K.'s behalf that the circuit court should vacate the default judgment. Counsel was present and vigorously defended Mable K. with respect to the sanction imposed. After Mable K.'s testimony, the circuit court asked Attorney Lehner whether she had any further evidence or witnesses to present. Attorney Lehner responded that she did not. The circuit court did not take further evidence against Mable K.; Dane County and the guardian ad litem rested immediately after Mable K. testified.
*449 ¶ 126. Mable K. and Attorney Lehner appeared at the dispositional hearing on January 3, 2011, where Attorney Lehner once again cross-examined Dane County's witnesses. At the end of one witness's testimony, the circuit court asked Attorney Lehner if she had further questions, and she responded that she did not. The circuit court then asked all of the parties if they had any further evidence that they would like to produce, and Attorney Lehner responded "No, Your Honor."
¶ 127. Unlike in Shirley E., where the circuit court dismissed Shirley E.'s attorney from the courtroom before any evidence was presented, Attorney Lehner actively participated in the trial and vigorously defended Mable K.'s actions. Based on the extensive participation of Attorney Lehner in this case, I would conclude that Mable K.'s right to counsel was not violated under the standards this court set in Shirley E.[14]
¶ 128. For the foregoing reasons, I conclude that the circuit court did not err; accordingly, I respectfully dissent.
¶ 129. I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and MICHAEL J. GABLEMAN join this dissent.

 There are two parts to a TPR case. The first part is the fact-finding hearing, where the jury or the court determines whether there are grounds to terminate the parental rights. *430 Wis. Stat. § 48.424. The second part is a dispositional hearing, where the court determines whether TPR is in the child's best interest. Wis. Stat. § 48.427.

 We do not pass judgment today on whether the trial court was correct in its vacation of the order terminating Mable K.'s parental rights.

 Mable K.'s parental rights to Samuel C. were terminated in a prior TPR case. The transcript in this case indicates that Mable K. arrived three hours late to that proceeding.

 Isaiah H.'s father, Lee H., has had very little direct contact with Isaiah H., has been unavailable, and has been on the run or incarcerated. After he was rearrested in January 2010, and placed in Dodge Correctional Institution, he had a couple of phone contacts with a social worker in March and April 2010. His parental rights have been terminated and are not the subject of this appeal.

 The hospital staff observed Mable K. talking on the phone and ignoring the baby. On one occasion, Mable K. left the *433 hospital room while the baby was in Mable K.'s hospital bed. It seemed as if Mable K. forgot that the baby was there.

 Wesley J.'s parental rights have been terminated and are not the subject of this appeal.

 Wisconsin Stat. §802.10(7), "Sanctions," provides that "[v]iolations of a scheduling or pretrial order are subject to ss. 802.05, 804.12 and 805.03.” Wisconsin Stat. § 805.03, "Failure to prosecute or comply with procedure statutes," provides in part: "[F]or failure of any party to .. . obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under s. 804.12(2)(a)." Wisconsin Stat. § 804.12(2)(a)3., "Failure to comply with order," gives the court the power to provide "just" sanctions for failure to obey an order, including "rendering a judgment by default against the disobedient party."

 This court has previously rejected the argument that a parent has an absolute right to a jury trial under the TPR statutes. Steven V. v. Kelley H., 2004 WI 47, ¶ 33, 271 Wis. 2d 1, 678 N.W.2d 856. A parent's right to a jury trial in TPR proceedings is statutory, not constitutional. Id., ¶ 4. Because TPR proceedings are civil in nature, the general rules of civil procedure are applicable unless Chapter 48 of the Wisconsin Statutes provides a more specific rule. See id., ¶ 32. The court in Steven V. concluded:
The circuit court, however, is always responsible for conclusions of law, as is specifically recognized in the TPR statutes. See Wis. Stat. § 48.31(4). If a motion for summary judgment is made and supported as prescribed by Wis. Stat. § 802.08, the circuit court may properly conclude at the fact-finding hearing that there is no genuine issue of material fact in dispute and the moving party is entitled to partial summary judgment on parental unfitness as a matter of law. See Wis. Stat. § 802.08(2).
*439 Id., ¶ 34. Further, several cases have concluded that a directed verdict pursuant to Wis. Stat. § 805.14(4) applies to TPR proceedings. Id., ¶ 32 (citing Door Cnty. DHFS v. Scott S., 230 Wis. 2d 460, 465, 602 N.W.2d 167 (Ct. App. 1999); J.A.B. v. Waukesha Cnty. Human Servs. Dep't, 153 Wis. 2d 761, 765, 451 N.W.2d 799 (Ct. App. 1989)). See also Wis. Stat. § 971.04(3) (stating that if defendant is present at beginning of criminal jury trial, then voluntarily absents himself, the trial may proceed without the defendant).
It is also interesting to note that only five states currently allow jury trials in TPR cases. See Wis. Stat. § 48.31(2); Tex. Fam. Code Ann. § 105.002 (West 2012); Okla. Stat. Ann. tit. 10A, § 1-4-502 (West 2012); Wyo. Stat. Ann. § 14-2-312 (West 2012); Va. Code Ann. § 16.1-296 (West 2012); Linda Szymanski, Is a Jury Trial Ever Available in a Termination of Parental Rights Case?, National Center for Juvenile Justice Snapshot, March 2011, Vol. 16, No. 3; James L. Buchwalter, Annotation, Right to Jury Trial in Child Neglect, Child Abuse, or Termination of Parental Rights Proceedings, 102 A.L.R. 5th 227 (2002).

 A circuit court may grant a default judgment in a TPR proceeding for a non-appearing party if, inter alia, there is sufficient evidence to support the grounds for the petition and the default does not violate the party's statutory right to counsel. See infra, parts III.B. and III.C.

 The transcripts in this case total 587 pages from the time the petition was filed through the first day of the fact-finding hearing.

 At the postconviction motion hearing on August 16, 2011, Attorney Lehner testified that she intended to call Mable K. to rebut both grounds for termination of her rights that were set out in the petition. Attorney Lehner also testified that she intended to cross-examine Joyce Brown to rebut the CHIPS claim, but Brown was never called as a witness in the fact-finding hearing. The petitioners rested the case as to Mable K. *442 after the testimony of Brenda Blank and Mike Boehm, and Attorney Lehner was allowed to cross-examine both of these witnesses. Further, Dane County asked Attorney Lehner if she would have called any other witnesses on her witness list during the fact-finding hearing, and she stated that she would have called the social workers if the other parties had not already called them. She did not name any other witnesses that she was prevented from calling to testify.

 To establish a CHIPS claim under Wis. Stat. § 48.415(2)(a) "Continuing need of protection or services," the petitioner must prove the following:
1. That the child has been adjudged to he a child ... in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345 . . . containing the notice required by s. 48.356(2);
2. That the agency responsible for the care of the child and the family . . . has made a reasonable effort to provide the services ordered by the court;
3. That the child has been outside the home for a cumulative total period of 6 months or longer pursuant to such orders; and
4. That the parent has failed to meet the conditions established for the safe return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions within the 9-month period following the fact-finding hearing under s. 48.424.

 One way to establish an abandonment claim under Wis. Stat. § 48.415(1), is for the petitioner to prove:
1. That the child has been placed, or continued in a placement, outside the parent's home by a court order containing the notice required by s. 48.356(2) ... , and
2. [That] the parent has failed to visit or communicate with the child for a period of 3 months or longer.

 At the Machner hearing, Attorney Lehner testified that she did not have witnesses available and that Mable K.'s absence left her without any viable witnesses through which she could present evidence. Counsel testified that she did not have advanced notice that Mable K. would not appear. If trial counsel was left with no option, that was Mable K.'s own doing. Mable K. testified that Attorney Lehner had explained the effects of a default judgment. In other words, Mable K. created her own prejudice by failing to appear.